Van Cor, Inc., Appellant, *v.* American Casualty Company of Reading.

Argued November 11, 1964. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Melvin Lashner,* with him *Adelman & Lavine,* for appellants.

*Edward H. Cushman,* with him *Kenneth M. Cushman,* and *Cushman & Obert,* for appellee.

OPINION PER CURIAM, March 23, 1965:

The order of the court below is affirmed on the following excerpts from the able opinion of Judge CHARLES WATERS:

"Van Cor, Inc. [Van Cor], is successor to Daniel B. Van Campen Corporation, which contracted to perform the general construction work in the erection of a junior high school building for Marple-Newtown Joint School Authority. The authority awarded a separate contract to M. Zucker Co. [Zucker] for the electrical construction. . . . American Casualty Company of Reading, Pennsylvania [Casualty Company], was surety for [Zucker] in two bonds issued to the authority, one a 'performance bond' and the other a 'labor and materialmen's bond.' [Zucker] encountered difficulty in the performance of its contract, and eventually went into bankruptcy and was declared in default. The uncompleted portion of the electrical work was performed by another contractor under contract with the authority, and the added expense to which the authority was thereby put over and above the original contract price for the electrical work was paid to the authority by [the Casualty Company] pursuant to the terms of its performance bond.

"The present action is brought by Van Cor, the building contractor, to recover, first, under the performance bond, damages which it claims to have suffered by reason of delays in the completion of its build-

ing contract caused by [Zucker's] failure to perform in accordance with its contract; and, second, under the labor and materialmen's bond, for labor and material furnished by [Van Cor] to [Zucker] in the performance of its contract.

"There is no dispute of the fact that [Zucker] was in default or of the fact that the delay in completion of [Van Cor's] contract, and the resultant loss to [Van Cor], were, in part at least, caused by [Zucker's] faulty performance. Nor is it seriously disputed that [Van Cor] furnished to [Zucker] the labor and material forming the basis of [Van Cor's] claim under the labor and materialmen's bond. [The Casualty Company's] position is, in respect of the first claim, that [its] undertaking in the performance bond does not render it answerable to other contractors for delays caused by its principal but runs only to the benefit of the school authority, the obligee; and, in respect of the second claim, that the suit is barred by the running of the one-year limitation contained in the bond and in the applicable statute, to which later reference will be made. . . .

"Giving our attention first to [Van Cor's] claim for delay damages, we find that the cause of action on which [Van Cor] relies in its complaint is that [the Casualty Company], knowing that [Zucker] had become bankrupt and was unable to complete its contract, refused, despite demand, to perform the electrical contract promptly. I have never before heard it asserted that the surety in a performance bond is itself obligated to perform the contract of its principal. It may, of course, do so; but unless such a provision is contained in the bond the surety is not required to carry out the contract. . . . The condition of the bond in the instant case, which is the natural place to look for the nature and extent of the liability assumed by the obligor, Com. v. Great American Indemnity Co., 312 Pa.

183, 187 (1933), is such 'that if the said principal shall and does well and truly, in all respects, comply with all the terms, conditions and covenants contained and set forth in the aforesaid contract . . . and shall and does save harmless, protect, and indemnify the obligee, of, from and against all loss, damage and expense by reason of the principal's failure for any cause whatsoever to comply with the aforesaid contract, . . . then this obligation shall be null and void: otherwise to be and remain in full force and effect.' The language here is unambiguous; we cannot read into it any expansion of the obligation assumed.

"However, as the case developed at trial it became apparent that [Van Cor] was proceeding on a different theory. [Van Cor] contends, and quite rightly, that the terms of the contract and specifications between the authority and [Zucker] became part of the bond issued by the surety. [Van Cor] contends further that paragraph 20 of the general conditions spells out the cooperation which [Zucker] was required to give to other contractors on the project; that by that paragraph other contractors, including [Van Cor], became donee beneficiaries of the contract between the authority and [Zucker]; that [the Casualty Company], having assumed the obligation to answer to the authority for its principal's default, became liable to [Van Cor] for [Zucker's] failure to carry on its work with the required measure of cooperation.

. . .

"The paragraph of the electrical contract relied on by [Van Cor], number 20, is headed 'Cooperation,' and from it [Van Cor] in its complaint quotes the following sections: '(a) If this contract is proceeding with another, the contractor shall be responsible for any acts or omissions that interfere with the progress of the work of the other contractor or contractors. . . . (c) Each contractor shall carefully examine all drawings

and specifications and carry on his work in such manner as not to interfere with or delay the work of other contractors. If any part of a contractor's work depends upon the proper execution or results of some other contract, the former shall inspect and report in writing to the architect any defects in such work.'

"Other provisions in the contract papers are to somewhat the same effect, but need not be here stated in full.

"We are considering now the possible liability of one contractor to another arising out of such contract provisions, because I think it may safely be said that if [Zucker] were not liable at the suit of [Van Cor], it would be futile to assert liability against the surety. [Citing] Brotherton v. Merritt-Chapman & Scott Corp., 213 F. 2d 477 (1954). . . .

. . .

"The Reed [v. Adams Steel & Wire Works, 57 Ind. App. 259, 106 N.E. 882] case contains a brief but clear statement of the law respecting third-party beneficiaries: 'In order to entitle a person to maintain an action on a contract to which he is not a party, it must clearly appear that it was the purpose of the contract to impose an obligation on one of the contracting parties in favor of the person claiming the right of action.'

. . .

"That this is the law of Pennsylvania is clear from a reading of many of our appellate decisions, among them several which have been cited by [Van Cor]. Compare, for example, the statement found in Spires v. Hanover Fire Insurance Company, 364 Pa. 52, 56 (1950) : 'To be a third party beneficiary entitled to recover on a contract it is not enough that it be intended by *one* of the parties to the contract and the *third person* that the latter should be a beneficiary, but *both parties to the contract* must so intend and must indicate that intention in the contract; in other words,

a promisor cannot be held liable to an alleged beneficiary of a contract unless the latter was within his contemplation at the time the contract was entered into and such liability was intentionally assumed by him in his undertaking; the obligation to the third party must be created, and must affirmatively appear, in the contract itself.' See also Burke v. North Huntingdon Township, 390 Pa. 588 (1957); Silverman v. Food Fair Stores, 407 Pa. 507 (1962).

"It must be kept in mind that we are considering [Van Cor's] status as a third-party beneficiary not only of the electrical construction contract but also of the contract of surety executed by [the Casualty Company]. The parties involved here showed that they knew how to provide for third-party beneficiaries when they wrote into the contracts, in paragraph 2(i), that the contractor covenants and agrees to pay for all labor and material furnished in the performance of the contract. That they knew how to insert such a provision in a surety bond is evidenced by the wording of the condition of the labor and materialmen's bond here in suit, which is 'that if the said principal and said principal's sub-contractors, if any, shall and do promptly pay or cause to be paid to any and every person, copartnership, association, firm or corporation interested, any and all sum or sums of money which shall become due for any and all material (as defined in the Contract) furnished and labor and/or services supplied or performed in the prosecution of the work required or contemplated, and shall and do, likewise, pay for all machinery employed or used in and about such work or improvement, and shall and do comply with all the provisions of the Municipality [Authorities] Act of 1945, P. L. 382, its supplements and amendments, then this obligation shall be null and void: Otherwise to be and remain in full force and effect,' and by the succeeding paragraph which expressly stipulates that

anyone furnishing labor or material may bring suit on the bond as if he had been named therein. . . .

"In [*Pennsylvania Supply Co. v. National Casualty Co.*, 152 Pa. Superior Ct. 217] the policy in respect of public construction was held to be applicable to a private contract and the labor and material man was permitted to recover where the contract provided that 'the contractor shall provide and pay for all materials, labor, tools, water, power and other items necessary to complete the work.' And admittedly the policy has not been confined strictly to items of labor and material, as the two exceptions above mentioned show. . . .

"Despite the apparently increasing liberal policy in this respect, and even though a corporate surety in business for profit is not a 'favorite of the law,' Pennsylvania Supply Co. v. National Casualty Co., supra, I cannot bring myself to the conclusion that the parties to the contract and bond in suit intended to make [Van Cor] a third-party beneficiary entitled to recover for delay damages such as here involved.

"The claim for labor and materials supplied stands on an entirely different footing. There is no question that the suit was not brought within one year after the cause of action accrued, as required by the terms of the bond and by the statute of May 2, 1945, P. L. 382, §10, 53 P.S. §312. The only question is whether [Casualty Company] by its conduct is estopped to assert this defense. I must conclude that it is not. . . .

. . .

". . . We have no evidence of fraud or concealment in this case. . . . I do not think the evidence is sufficient to warrant a finding that [Casualty Company] either waived the limitation or requested [Van Cor] to refrain from bringing suit. . . . Even accepting [Van Cor's] contention that it was induced to refrain from bringing suit at that time, no justification appears for the subsequent delay of almost a year and a half." (Emphasis as in the original.)