371 A.2d 178

PENNSYLVANIA LIQUOR CONTROL BOARD, Common-
wealth of Pennsylvania and Pennsylvania Liquor Control
Board, Commonwealth of Pennsylvania to use of Holt
Hauling and Warehousing Systems, Inc., Appellants,

v.

RAPISTAN, INCORPORATED, Principal,
and Federal Insurance Company,
Surety.

Supreme Court of Pennsylvania.

Argued Jan. 14, 1975.

Decided Oct. 8, 1976.

Rehearing Denied Nov. 5, 1976.

38

———◆———

Robert H. Malis, Malis, Tolson & Malis, Philadelphia, for appellants.

Gordon W. Gerber, Dechert, Price & Rhoads, Philadelphia, for appellees.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY and MANDERINO, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

This appeal arises from a contractual dispute between the Pennsylvania Liquor Control Board ("PLCB") and Rapistan, Inc. ("Rapistan"). The PLCB filed a complaint in the Commonwealth Court against Rapistan and Rapistan's surety, Federal Insurance Company ("Federal") alleging breach of contract. Rapistan and Federal filed preliminary objections. The Commonwealth Court sustained the preliminary objections and dismissed the complaint.[1] The PLCB appealed.[2] We reverse.

In 1970, the PLCB contracted with Rapistan for the construction and installation by Rapistan of an $875,300 conveyor system in the PLCB's Philadelphia warehouse. The contract provided that the conveyor system would be capable of handling 25,000 cases of alcoholic beverages in an eight hour period. Federal executed a $875,300 bond conditioned upon Rapistan's performance. Subsequently, the PLCB contracted with Holt Hauling and Warehousing Systems, Inc. ("Holt") for the operation of the warehouse. Holt allegedly relied on the conveyor system specifications in the Rapistan-PLCB contract in computing its offer to the PLCB.

In October 1970, Holt began operation of the conveyor system. A dispute arose soon thereafter because the system was unable to handle 25,000 cases per eight hour period. The PLCB refused to make payment of the final $95,000 due to Rapistan under their contract. It also entered into two agreements modifying its original contract with Holt. The PLCB agreed to reimburse Holt for additional costs incurred due to the faulty equipment and to increase the contract rates for handling the cases.

1. 14 Pa.Cmwlth.Ct. 501, 323 A.2d 410 (1974).

2. See the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 203, 17 P.S. § 211.203 (Supp.1976).

Holt agreed to withdraw a claim it had filed against the PLCB before the Board of Arbitration of Claims. However, the parties stated that the modifications "shall not be deemed to constitute full satisfaction of [Holt's] claims on account of [the conveyor system] which may be asserted hereafter by [Holt] against Rapistan." The parties agreed to file joint or separate actions against Rapistan to determine Rapistan's liability and agreed upon a formula to divide any award.[3]

On June 8, 1973, the PLCB filed this action on its own behalf and "to use of" Holt in the Commonwealth Court. The complaint sought damages for breach of contract on six counts: (1) costs for modifications to make the conveyor system capable of meeting the contract standards ($404,684.84); (2) recovery of money paid by the PLCB to Holt in the modification agreement ($1,405,764.59); (3) damages for breakage of the PLCB's product allegedly caused by defects in the conveyor system ($282,892.93); (4) the sum of the damages set forth in counts one, two and three ($2,093,342.36); (5) recovery from Federal of the face amount of the performance bond ($875,300); and (6) recovery of Holt's damages over and above the amount paid to Holt by the PLCB ($5,117,832.00).

---

**3.** The modification agreement provides:

"[Holt] shall share equally any recovery by the Board if [Holt] has been denied any recovery whatsoever . . . [Holt] shall share that part of any recovery by the Board to equalize shares if any recovery by [Holt] is less than that of the Board and . . . the parties hereto shall each completely retain any separate recoveries if any recovery by [Holt] is more than that of the Board . . . ."

In its brief, Rapistan argues that this modification agreement demonstrates that the PLCB is acting solely on behalf of a private litigant. It concludes that the Commonwealth Court, which only has original jurisdiction of claims by the Commonwealth, does not have jurisdiction. We disagree. The agreement by the PLCB and Holt to share any recovery from Rapistan is not relevant to the determination of Rapistan's liability to the PLCB. Moreover, the agreement does not divest the PLCB of any recovery; in fact, it retains a substantial interest in the outcome of the suit.

Rapistan and Federal raised preliminary objections to the PLCB's complaint, which included: (1) a demurrer to counts two and six because they concern transactions between the PLCB and Holt and create no rights, obligations or causes of action for or against Rapistan; and (2) an objection to the jurisdiction of the Commonwealth Court because the contract provides for arbitration of all disputes.[4] The Commonwealth Court sustained these objections and dismissed the PLCB's complaint.

*Dismissal of Counts Two and Six*

The Commonwealth Court dismissed counts two and six because it found that Holt was not a third party-creditor beneficiary of the contract between the PLCB and Rapistan and that the PLCB therefore could not sue on Holt's behalf.

■ To determine whether this preliminary objection was properly sustained, we must consider as true all "well-pleaded" material facts set forth in the PLCB's complaint and all reasonable inferences that may be drawn from those facts. *Reardon v. Wilbur*, 441 Pa. 551, 272 A.2d 888 (1971). Applying this test, it is clear the Commonwealth Court erred in dismissing count two.

4. Rapistan and Federal raised four additional preliminary objections: (1) an objection to the Commonwealth Court's jurisdiction because the complaint is not brought by the Commonwealth or an officer thereof acting within his official capacity; (2) an objection to the Commonwealth Court's jurisdiction because Rapistan had already filed a claim before the Board of Arbitration of Claims and the PLCB is therefore required to file its complaint in that forum; (3) a demurrer to count five because it fails to set forth any demand by the PLCB that Federal perform or complete Rapistan's contract, fails to set forth any basis for calculation of damage, and fails to set forth any basis of a claim; and (4) a motion for a more specific pleading in counts one and three. The first and second objections are addressed infra at 184, 185. The third and fourth objections were never reached by the Commonwealth Court because it dismissed the complaint on other grounds. We need not reach these issues because they do not question the jurisdiction of the Commonwealth Court to hear the PLCB's complaint. They may, of course, be raised on remand to that court.

The PLCB, in its complaint, asserts that its liability to Holt was caused by Rapistan's breach of contract. The facts alleged support this claim. The conveyor system, according to the complaint, does not meet contract specifications, and, as a result, the cost of handling the cases is more than originally contemplated and the number of warehouse employees needed is greater. The PLCB was therefore forced to renegotiate its contract with Holt at considerable expense. The PLCB's losses are directly attributable to the breach of contract by Rapistan. It is therefore entitled to recover from Rapistan so long as the damages were "reasonably foreseeable" at the time of contracting and can be proved with reasonable certainty. *Macchia v. Megow*, 355 Pa. 565, 50 A.2d 314 (1947); 5 Corbin on Contracts § 1007 (1964).

Count six was properly dismissed, however. The PLCB has settled its liability with Holt, and Holt cannot now sue the PLCB for any additional damages. Thus, the PLCB's liability to Holt caused by Rapistan's breach is limited to the sum in count two. Because the PLCB has no further liability to Holt, it has no cause of action of its own for the amount stated in count six.

The PLCB argues that, although it is not the real party in interest in count six, it can assert its claim "to the use of Holt" because Holt is a third party beneficiary of the Rapistan-PLCB contract. Pennsylvania Rule of Civil Procedure 2002 provides in pertinent part:

"(a) Except as otherwise provided in clauses (b), (c) and (d) of this rule, all actions shall be prosecuted by and in the name of the real party in interest . . ..

"(b) A plaintiff may sue in his own name without joining as plaintiff or use-plaintiff any person beneficially interested when such plaintiff . . .

(2) is a person with whom or in whose name a contract has been made for the benefit of another."

In *Spires v. Hanover Fire Insurance Co.*, 364 Pa. 52, 56–57, 70 A.2d 828, 830–31 (1950), this Court stated:

"To be a third party beneficiary entitled to recover on a contract it is not enough that it be intended by *one* of the parties to the contract and the *third person* that the latter should be a beneficiary, but *both parties to the contract* must so intend and must indicate that intention in the contract; in other words, a promisor cannot be held liable to an alleged beneficiary of a contract unless the latter was within his contemplation at the time the contract was entered into and such liability was intentionally assumed by him in his undertaking; the obligation to the third party must be created and must affirmatively appear, in the contract itself . . .." (Emphasis in original.)

Accord, *Van Cor, Inc. v. American Casualty Co. of Reading*, 417 Pa. 408, 208 A.2d 267 (1965) ; *Farmers National Bank of Ephrata v. Employers Liability Assurance Corp., Ltd.*, 414 Pa. 91, 199 A.2d 272 (1964); *Silverman v. Food Fair Stores, Inc.*, 407 Pa. 507, 180 A.2d 894 (1962) ; *Hilbrook Apartments, Inc. v. Nyce Crete Co.*, 237 Pa.Super. 565, 352 A.2d 148 (1975). The Commonwealth Court, applying this standard, held that Holt was not a creditor beneficiary of the Rapistan-PLCB contract.

There has been some criticism recently concerning the requirement that the intent to benefit a third party be expressed in the contract itself. See, e.g., *Hillbrook Apartments, Inc. v. Nyce Crete Co.*, supra at 577, 352 A. 2d at 154 (dissenting opinion of Cercone, J., joined by Jacobs, J.).[5] Indeed, statements in many cases ap-

5. Professor Murray states:
 "That a beneficiary may have rights under a contract, although he is not specifically named therein, is clear from the decided cases."
 Murray on Contracts § 283 (Rev. ed. 1974).
 Professor Corbin states that a third party is a creditor beneficiary if:
 "the promisee in a contract contemplates the present or future existence of a duty or liability to a third party and enters into

pear to indicate that the intent of the parties to benefit another should be determined from the circumstances surrounding the contract as well as from the contract itself. See, e. g., *Silverman v. Food Fair Stores, Inc.*, 407 Pa. at 509–10, 180 A.2d at 895 (" 'The question whether a contract was intended for the benefit of a third person is one of construction. The intention of the parties in this respect is determined by the terms of the contract as a whole, construed in the light of circumstances under which it was made.' "); *Mowrer v. Porrier v. McLane Corp.*, 382 Pa. 2, 114 A.2d 88 (1955); *Hillbrook Apartments, Inc. v. Nyce Crete Co.*, supra.

The PLCB argues that this Court should adopt the standard for intended beneficiary status set forth in section 133 of the Restatement (Second) of Contracts (Rev. ed. Tentative Drafts 1–7, 1973), which abolishes the distinction between creditor and donee beneficiaries. See also *Hillbrook Apartments, Inc. v. Nyce Crete Co.*, supra at 580, 352 A.2d at 155 (dissenting opinion of Cercone, J., joined by Jacobs, J.). It provides:

"(1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and

. . . . . . . .

(b) *the circumstances indicate* that the promisee intends to give the beneficiary the benefit of the promised performance."

Under this Restatement provision, a third party is an intended beneficiary only if he can reasonably rely on the contract as manifesting an intent to confer a right on him. Restatement (Second) of Contracts § 133 (comment d) (Rev. ed. Tentative Drafts 1–7, 1973). Thus,

the contract with the expressed intent that the performance contracted for is to satisfy and discharge that duty or liability." 4 Corbin on Contracts § 787 (1951). He does not require that the expressed intent be found in the contract itself.

although there is no requirement that the intent to create an intended beneficiary be expressed in the contract, there must still be evidence, sufficient to permit reasonable reliance, that the promisee and promisor intended to confer a right on a third party. .

 Here, even accepting the PLCB's position, it must allege facts to show that Holt could reasonably assume that the PLCB and Rapistan intended to confer a right on Holt to Rapistan's performance. The PLCB-Rapistan contract makes no mention of any third party beneficiary, and the PLCB has only alleged that Rapistan was aware that a third party would operate the equipment. This by itself is insufficient. Nowhere in the contract or the complaint is it shown or alleged that the PLCB intended to use Rapistan's promise to build the conveyor system to discharge a contractual duty to a third party. There is no indication that neither the PLCB or Rapistan intended a right to flow from their contract directly to a third party. In these circumstances, Holt could not reasonably assume that the parties intended to confer on it a right to Rapistan's performance. Thus, Holt is not an intended beneficiary and count six was properly dismissed.

*Dismissal of Counts One, Three and Four*

The Commonwealth Court held that it did not have jurisdiction to resolve disputes between Rapistan and the PLCB arising under their contract because the parties had agreed to submit all such disputes to arbitration. The court relied on the following clause in the contract:

"ARBITRATION All questions or disputes arising between the parties hereto with respect to any matter pertaining to this contract or any part thereto, or any breach of said contract arising thereunder, shall be referred to the Attorney General of the Commonwealth of Pennsylvania under Section 2408, of the Administrative Code of 1929, or the Board of Arbitration of

Claims (as set forth in Act of May 20, 1937, P.L. 728) whichever the claimant shall elect, whose decision and award shall be final and binding and conclusive upon all parties hereto, except that either party shall have the right to appeal from said decision and award as provided by law; and all right or rights or any action at law or in equity and by virtue of this contract, and all matters connected with it and relative thereto are hereby expressly waived. References to questions under this arbitration provision must be presented prior to the final payment to the Contractor or Contractors."

The PLCB argues that it is not a "claimant" as defined in the agreement and that, therefore, it is not required to arbitrate its claims against Rapistan. We agree.

Under the terms of the arbitration clause, the claimant has the option to refer any contractual dispute either to the Attorney General or the Board of Arbitration of Claims ("board of arbitration"). The decision of the arbitrator so chosen is final and binding. If the PLCB was intended to be a claimant, this would give it the option to bring its claim before the Attorney General for final decision. However, the Attorney General is the very person who initiates the suit against the contracting party on behalf of the PLCB. A contracting party with the PLCB could hardly have intended to allow the PLCB to decide the merits of the PLCB's own claim.

The Commonwealth Court agreed that the PLCB could not submit its claims against Rapistan to the Attorney General. However, it concluded that, pursuant to the arbitration clause, the PLCB must bring all its claims before the board of arbitration.

This conclusion ignores the statutory authority of the board of arbitration. The Act of May 20, 1937, P.L. 728, § 1, as amended, 72 P.S. § 4651–1 (1968), provides in pertinent part:

"There is hereby created a departmental administrative board in the Department of the Auditor General,

known as the Board of Arbitration of Claims, the duty of which shall be to arbitrate claims against the Commonwealth arising from contracts entered into by the Commonwealth."

Section 4, the jurisdictional provision of the act, provides:

"The Board of Arbitration shall have jurisdiction to hear and determine all claims against the Commonwealth arising from contracts hereafter entered into with the Commonwealth, where the amount in controversy amounts to $300.00 or more."

Id. § 4, 72 P.S. § 4651–4.

■■ As these provisions clearly state, the statutory authority of the board of arbitration is limited to claims against the Commonwealth. See *Pennsylvania Turnpike Commission v. Sanders & Thomas, Inc.*, 461 Pa. 420, 430, 336 A.2d 609, 615 (1975). The parties cannot, by consent, confer jurisdiction on the board of arbitration absent the necessary statutory authorization. *Pennsylvania Turnpike Commission v. Sanders & Thomas, Inc.*, supra; *Adam Eidermiller, Inc. v. The State Highway & Bridge Authority*, 408 Pa. 195, 201, 182 A.2d 911, 914 (1962). As this Court stated in *Pennsylvania Turnpike Commission:*

"A contract between the Commonwealth and another may provide for arbitration under the [Arbitration] Act of 1937. . . . Under that Act the Board of Arbitration of Claims has jurisdiction only over claims *against* the Commonwealth . . .." (Emphasis in original.)

461 Pa. at 431, 336 A.2d at 615.

■ Because the PLCB is not permitted to submit any claim against Rapistan to either the Attorney General or the board of arbitration, the term "claimant" as used in the arbitration clause can only refer to a party seeking recovery against the Commonwealth, here, Rap-

istan. The Commonwealth Court therefore erred in holding that the arbitration provision divested its jurisdiction over counts one, three and four, the claims by the PLCB against Rapistan.

■ Rapistan argues that the Commonwealth Court does not have jurisdiction over the PLCB's complaint because Rapistan filed a claim before the board of arbitration against the PLCB for the final $95,000 payment prior to the PLCB's suit. Rapistan urges that, because public policy favors arbitration, the board of arbitration should now have exclusive jurisdiction over all counterclaims arising from the contract. Under such an interpretation, the Commonwealth Court's jurisdiction would be dependent upon which party filed its claim first. We do not agree.

■■ The Commonwealth Court and the board of arbitration were designed by the Legislature to hear entirely different types of claims. The Appellate Court Jurisdiction Act of 1970 specifically provides that the Commonwealth Court "shall have original jurisdiction of . . . all civil actions or proceedings by the Commonwealth . . . except proceedings under the Eminent Domain Code . . .." [6] The board of arbitration's jurisdiction is limited to claims *against* the Commonwealth. One provision of the Arbitration Act indicates that the board of arbitration may hear counterclaims if they are brought before it.[7] However, there is absolutely no indication that the Legislature intended by that provision to divest the Commonwealth Court of original jurisdiction over "all civil actions . . . by the Com-

6. The Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. IV, § 401(a)(1), 17 P.S. § 211.401(a)(1) (Supp. 1976).

7. "The board [of arbitration] shall have power to order the interpleader or impleader of other parties whenever necessary for a complete determination of any claim or counterclaim."
Act of May 20, 1937, P.L. 728, § 6, as amended, 72 P.S. § 4651–6 (1968).

monwealth" if the party opposing the Commonwealth proceeds first in the board of arbitration. .

The Commonwealth cannot be compelled to bring its claim before its own board of arbitration, especially when, as here, that claim is far larger than the opposing party's claim. The Commonwealth Court was established to hear such claims. Its jurisdiction may not be divested merely because the claimant seeking recovery against the Commonwealth acted first in instituting proceedings before the board of arbitration.

Finally, Rapistan argues that the Commonwealth Court does not have jurisdiction because the PLCB's complaint is not brought by either the Commonwealth or one of its officers acting within his official capacity. We disagree.

▉▉▉ Section 102(a) of the Appellate Court Jurisdiction Act defines "Commonwealth" to include "independent boards." [8] Section 201 of the Liquor Code states that the PLCB is an "independent administrative board." [9] Therefore, the PLCB may proceed before the Commonwealth Court, which has original jurisdiction over all suits brought by the Commonwealth.[10] See *Befwick of Philadelphia, Inc. v. Cobblestones, Inc. and Pennsylvania Liquor Control Board*, 466 Pa. 488, 353 A.2d 459 (1976).

8. The Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. I, § 102(a)(2), 17 P.S. § 211.102(a)(2) (Supp. 1976).

9. Liquor Code, Act of April 12, 1951, P.L. 90, 47 P.S. § 2–201 (1969).

10. The Commonwealth Court agreed that the PLCB could institute an action before it. However, it stated that the suit should be brought by the Commonwealth and not by the individual agency. It described this error as a "technical defect" which can be cured by amendment pursuant to Pennsylvania Rule of Civil Procedure 1033. However, the caption of the complaint reads: "Pennsylvania Liquor Control Board, *Commonwealth of Pennsylvania*." (Emphasis added.) The complaint is clearly brought in the name of the Commonwealth as required by Pennsylvania Rule of Civil Procedure 2102(a), and no defect appears.

*Dismissal of Count Five*

Count five of the PLCB's complaint demands judgment against Federal, Rapistan's surety, to the amount of Federal's performance bond. The Commonwealth Court dismissed the count because Federal's liability is dependent on the determination of Rapistan's liability. Because the court held that it did not have jurisdiction to hear claims against Rapistan, it concluded that it could not hear the claim against Federal.

 Because we hold that the Commonwealth Court does have jurisdiction to determine Rapistan's liability, it follows that it also has jurisdiction over the cause of action against Federal. Therefore, count five was erroneously dismissed.

Order of the Commonwealth Court dismissing the Pennsylvania Liquor Control Board's complaint reversed; case remanded for proceedings consistent with this opinion.

NIX, J., did not participate in the consideration or decision of this case.

MANDERINO, J., filed a dissenting opinion.

MANDERINO, Justice (dissenting).

I dissent. The majority opinion virtually eliminates the counterclaim provisions in the Arbitration Act. That section of the Act provides:

> "The board [of arbitration] shall have *power to order* the interpleader or impleader of other parties whenever necessary for the complete determination of any claim or *counterclaim.*" (Emphasis added.)

Act of May 20, 1937, P.L. 728, No. 193, § 6, as amended, 72 P.S. § 4651–6.

The majority's interpretation of that section is as follows: The board of arbitration *may hear counterclaims*

*if* the Commonwealth decides to bring them before it. This interpretation construes the language of the counterclaim provision of the Arbitration Act as permissive rather than compulsory. Under the terms of the contract, however, the Commonwealth was bound to litigate any counterclaim before the board of arbitration. The contract, therefore, provided for compulsory counterclaims, rather than permissive counterclaims.

The majority opinion is completely contrary to all of the reasons that have been advanced in support of counterclaim provisions. In the past courts have attempted to force the disposition in one action of all claims which have arisen between the parties to the litigation. This, of course, would eliminate any multiplicity of lawsuits and any possible contradiction of results. The majority, however, ignores these factors and would rather allow the Commonwealth to choose its forum since its counterclaim is larger than the claim presented by Rapistan.

It is most unfortunate that the majority is forced to reach a strained construction of a *statute* in order to accommodate one of the parties under a *contract* provision. Since we are dealing with an interpretation of the arbitration clause in the contract it would be much more reasonable to conclude that the Commonwealth is required to litigate the counterclaim against Rapistan before the board of arbitration. Accordingly, I would affirm the order of the Commonwealth Court dismissing the Commonwealth's complaint.