## Mummery v. The Kemper Group

*Arthur Wolk,* for plaintiff.

*Walter J. Timby, Jr.,* for defendant Kemper Group.

*Henry W. Sawyer, III,* for defendants Gusky and Renneisen.

LOWE, *P.J.,* January 6, 1984—On October 24, 1978 plaintiff's daughter was struck and killed by a motor vehicle as she was walking to a school bus stop. The vehicle was operated by Radcliffe W. Farley and owned by North American Clothing Card Co., Inc. (North American). Plaintiff, as administrator of his daughter's estate, instituted an action in trespass (No. 79-0239) against Farley, North American, and the North Penn School District (School District). Farley and North American were insured by the Kemper Group (Kemper).[1] Prior to trial, Farley and North American arranged to settle the case for $90,000; in exchange, plaintiff executed a Joint Tortfeasor Release. The School District did not settle and trial commenced on December 3, 1982 before Judge Lawrence A. Brown and a jury. The jury returned a verdict for the plaintiff in the amount of $151,819 finding Farley and North American 35 percent negligent and the School District 65 percent negligent. Counsel for Farley and North American filed a motion to mold the verdict which included a cross-claim for contribution against the School District. Judge Brown granted the motion to mold the verdict, but denied the cross-claim for contribution. That decision has been appealed.

---

1. The Lumbermens Mutual Casualty Company was the actual insurer; it is a member of the so-called Kemper Group. Counsel for the insurer claims that the Kemper Group is a legal non-entity and as such cannot be sued. For reasons advanced hereinafter, the court finds it unnecessary to reach that issue, and as a a matter of convenience the insurer will be referred to as "Kemper".

On February 7, 1983 plaintiff filed the instant complaint against Kemper and the two attorneys, Joel Gusky, Esq., and G. Wayne Renneisen, Esq., employed by Kemper to represent its insureds Farley and North American. As against Kemper, plaintiff claims that by filing a motion to mold the verdict, Kemper breached its settlement agreement. Additionally, Kemper is accused of fraud and deceit. As against Gusky and Renneisen, the complaint alleges that by filing the motion to mold the verdict, they tortiously interfered with plaintiff's contractual relationship with Kemper. Both attorneys are also accused of fraud and deceit.

The defendants filed preliminary objections to the complaint in the nature of a demurrer. On October 14, 1983 this court entered orders sustaining those objections.[2] Plaintiff now appeals to the Superior Court of Pennsylvania.

In Count I of his complaint, plaintiff sets forth the following allegations in an effort to state a cause of action for breach of contract against Kemper:

[T]he agreement embodied in the joint tortfeasor release between the plaintiff and the defendant, The Kemper Group, was predicated upon plaintiff retaining his right to a full recovery against all of the defendants. . . . The defendants' motion to mold the verdict in breach of the aforesaid agreement, has the sole purpose and effect of preventing a full recovery against all of the defendants by the plaintiff."

The Joint Tortfeasor Release was incorporated into the complaint and in pertinent part provides as follows:

---

2. A variety of preliminary objections were raised; because the court sustained defendants' demurrer, those questions were not addressed.

"The intent of this Release is to afford [defendants] no further liability other than that paid for as consideration for this Release even if liability was that of contribution or indemnity but to preserve to the plaintiff a full recovery against all other defendants, additional defendants or alleged tortfeasors."

Plaintiff argues that the term "full recovery" in the above quoted section of the release means the *entire* verdict. In other words, plaintiff reads the release as obligating Kemper to allow plaintiff to seek to recover the full $151,819 from the School District. Simply put, plaintiff believes that he is entitled to the $90,000 obtained through the release plus the $151,819 verdict. Plaintiff is in error.

Judge Brown's order dated May 13, 1983 molding the verdict did no more than apply the comparative negligence percentages fixed by the jury with certain adjustments mandated by the Pennsylvania No-fault Motor Vehicle Insurance Act (40 P.S. 1009.101 *et seq*). This court finds as a matter of law that plaintiff has received a "full recovery." The jury determined that the School District was 65 percent liable for the death of plaintiff's decedent. Consequently, plaintiff is entitled to no more from the School District than 65 percent of the monetary verdict, and that is precisely what Judge Brown's May 13, 1983 order gave him.

Without question, a settlement agreement is a valid contract between the parties thereto. Sale v. Ambler, 335 Pa. 165, 6 A.2d 519 (1939); Gogel v. Blozofsky, 187 Pa. Super. 32, 142 A.2d 313 (1958); School District of Philadelphia v. Framlau, 15 Pa. Commw. 621, 328 A.2d 866 (1974). As such, a breach can give rise to a cause of action. See, e.g., Barson's and Overbrook, Inc. v. Arce Sales Corp., 227 Pa. Super. 309, 324 A.2d 467 (1974). However, in the instant case, no breach occurred. Both parties

fully performed. Plaintiff agreed not to pursue his claim against Farley and North American in exchange for $90,000; Kemper paid the $90,000. A careful review of the Joint Tortfeasor Release reveals that nothing more is required by either party. Plaintiff's construction of the term "full recovery" is nothing more than a transparent attempt to create a cause of action where none exists. The court, therefore, properly sustained defendant Kemper's preliminary objection in the nature of a demurrer.

Count II of plaintiff's complaint claims that defendants Gusky and Renneisen tortiously interfered with the contractual relations between plaintiff and Kemper in order to "diminish the plaintiff's right to a full recovery which was an integral part of the contract. . . ." Here again, plaintiff's allegation is predicated upon his construction of the term "full recovery". The court has already rejected that interpretation. Moreover, plaintiff has failed to state a cause of action for tortious interference with contract.

In Adler, Barish, Daniels, Levin and Creskoff vs. Epstein, 482 Pa. 416, 393 A.2d 1175, (1978), appeal dismissed, cert. denied. 442 U.S. 907 (1979), the Supreme Court of Pennsylvania adopted § 766 of the Restatement (Second) of Torts (1977). That provision sets forth the essential elements of tortious interference with contract as follows:

One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

The sole question here is whether defendants' conduct was "improper". In making that determina-

tion, the court is authorized to consider the factors listed in §767 of the Restatement (Second) of Torts (1977), Adler, Barish, supra, 433. Those are:

(a) the nature of the actor's conduct,

(b) the actor's motive,

(c) the interests of the other with which the actor's conduct interferes,

(d) the interests sought to be advanced by the actor,

(e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other,

(f) the proximity or remoteness of the actor's conduct to the interference and

(g) the relations between the parties.

Taking each of these considerations in order, the court finds that: (1) The nature of defendants' action consisted of filing a standard post-trial motion the propriety of which cannot be questioned. Such motions are frequently filed as a matter of course in comparative negligence cases. (2) Plaintiff's complaint alleges that defendants' motive was "solely to tortiously interefere with the contractual relations between the plaintiff and [Kemper]." This court is obligated to accept "as true all 'well-Pleaded' material facts set forth in the . . . complaint and all reasonable inferences that may be drawn from those facts." Pennsylvania Liquor Control Board v. Rapistan, Inc., 472 Pa. 36, 42, 371 A.2d 178 (1976). However, the only reasonable inference that can be drawn from the facts as pleaded is that defendants' motivation was to protect their client's interests rather than to interfere with plaintiff's contract. (3) The interests of plaintiff with which defendants' conduct allegedly interfered are non-existent. As previously stated, the contract was fully performed. Nothing defendants could have done would have al-

tered that fact. (4) The interests sought to be advanced by defendants were those of their client. These attorneys did nothing more than Canon 7 of the Code of Professional Responsibility requires of every lawyer, that they zealously represent their client within the bounds of the law. (5) The social interests in protecting an attorney's freedom to act on behalf of his client are profoundly significant. When balanced against contractual interests which have been fully preserved, as they have been here, the actions taken by attorneys Gusky and Renneisen are entirely justifiable. (6) Defendants' conduct did not even remotely interfere with plaintiff's contractual relations. Again, the contract was completely performed and plaintiff received a full recovery. No more was required. (7) The significant relationship between these parties is that which existed between attorneys Gusky and Renneisen and their client Kemper. It was entirely proper for them to file a motion to mold the verdict on Kemper's behalf. *See* Code of Professional Responsibility, Canon 5 (A Lawyer Should Exercise Independent Professional Judgment on Behalf of a Client).

A final observation in this context is appropriate. The law of contribution in Pennsylvania is unsettled. The problem stems from the passage of the Comparative Negligence Act (42 Pa. C.S. §7102), and whether the statute has, to some extent, impliedly repealed the Uniform Contribution Among Tortfeasors Act (42 Pa. C.S. §8321 *et seq.*). Pre-comparative negligence cases, particularly Daugherty v. Hershberger, 386 Pa. 367, 126 A.2d 730 (1956) and Mong v. Hershberger, 200 Pa. Super. 68, 186 A.2d 247 (1962), support defendants' position with respect to the propriety of seeking contribution from the School District. However, a strong argument can also be made that the results

mandated by those decisions are no longer defensible in light of the Comparative Negligence Act. Apparently, Judge Brown has adopted the latter position. The appellate courts of this Commonwealth have yet to address the issue.

Under these circumstances, the court finds as a matter of law that the actions of defendants Gusky and Renneisen in attempting to seek contribution from the School District were taken in good faith, and were not improper. Therefore, no cause of action exists against them for tortious interference with contract. Consequently, defendants' preliminary objection in the nature of a demurrer was properly sustained.

In Count III of his complaint, plaintiff alleges that Kemper, Gusky, and Renneisen deceived him into "obtaining a comparative negligence percentage which might afford a claim to be made for contribution when, in fact, no claim for contribution was intended. . . ." Plaintiff also asserts that he was fraudulently "induced to alter his proofs and to share evidence preparation materials . . . for the sole purpose of reducing the percentage of comparative negligence against the defendant Kemper's insureds for the sole purpose of . . . making a claim for contribution to thereby diminish the plaintiff's recovery." Plaintiff seeks punitive damages, attorneys fees, expenses, delay damages, and any reduction in the total recovery.

In order to state a cause of action for fraud, the following elements must be established: (1) a misrepresentation, (2) a fraudulent utterance thereof, (3) an intention by the maker that the recipient will thereby be induced to act, (4) justifiable reliance by the recipient upon the misrepresentation, and (5) damage to the recipient as the proximate result. Neuman v. Corn Exchange National Bank and

Trust Company, 356 Pa. 442, 51 A.2d. 759 (1947); Borelli vs. Barthel, 205 Pa. Super. 442, 211 A.2d 11 (1965).

Taking as true all material facts set forth in plaintiff's Complaint and all reasonable inferences that may be drawn from those facts, the court finds as a matter of law that plaintiff has failed to state a cause of action for fraud. He has not and cannot set forth a causal relationship between the purported fraud and any damages incurred.

In effect, plaintiff asserts that by filing a cross-claim for contribution, defendants jeopardized his full recovery and caused him additional expense. However, plaintiff's basic premise is flawed. It overlooks the fact that any increased negligence percentage assessed against Farley and North American would have resulted in a reduced recovery against the School District. It was, therefore, in plaintiff's best interest to present his case exclusively against the School District, it being the only party left from which any additional recovery could be had. Once again, plaintiff's conception of the term "full recovery" is misplaced. Moreover, any additional attorney fees and expenses that have been generated are the result of plaintiff's conduct and not that of defendants. Consequently, the court was correct in sustaining defendants' preliminary objections in the nature of a demurrer.

This court is mindful that, "a case should be dismissed on preliminary objections only where the dismissal is clearly warranted and free from doubt." Interstate Traveller Services, Inc. v. Department of Environmental Resources, 486 Pa. 536, 539-540, 406 A.2d 1020 (1979). Those requirements have been met in the instant case.

In light of the foregoing, the determination of this court should not be disturbed on appeal.