**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 17-2742
_____

EARL PATTERSON
Appellant

v.

PENNSYLVANIA LIQUOR CONTROL BOARD
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. Action No. 2-16-cv-05687)
District Judge: Honorable J. Curtis Joyner
_____

Argued: June 19, 2018
_____

Before: GREENAWAY, JR., RESTREPO, BIBAS, *Circuit Judges*.

(Opinion Filed: February 12, 2019)
__

Wayne A. Ely,
Timothy M. Kolman,
W. Charles Sipio, [ARGUED]
Kolman Ely
414 Hulmeville Avenue
Penndel, PA 19047

*Counsel for Appellant*

J. Bart DeLone
Josh Shapiro
Claudia M. Tesoro [ARGUED]
Office of Attorney General of Pennsylvania
1600 Arch Street
Suite 300
Philadelphia, PA 19103

     *Counsel for Appellee*

—————————

OPINION OF THE COURT

—————————

**RESTREPO**, *Circuit Judge*.

     Earl Patterson was employed as a maintenance person for the Pennsylvania Liquor Control Board ("PLCB") when he reported for duty at a PLCB-operated liquor store in Eddystone, Pennsylvania. Shortly after his arrival, the location's assistant manager accused him of attempting to rob the store. Patterson was detained by the police as a result of the PLCB employee's accusation. Patterson filed a Complaint pursuant to 42 U.S.C. §§ 1981 and 1983 against the PLCB alleging race discrimination and violations of Fourteenth Amendment Equal Protection in connection with these events. Patterson now appeals the District Court's Order granting the PLCB's motion to dismiss his Complaint on Eleventh Amendment sovereign immunity grounds.[1] For the reasons that follow, we will affirm.

**I.**

     On the morning of November 17, 2014, Patterson—an African-American male and a longtime PLCB employee performing maintenance—arrived at a PLCB-run store in Eddystone, Pennsylvania to inquire about the store's operating

---

[1] Patterson has withdrawn his claim under 42 U.S.C. § 1981, and now bases his appeal on the District Court's determination that his claim under 42 U.S.C. § 1983 is barred on Eleventh Amendment sovereign immunity grounds.

condition. Upon his arrival, Patterson asked for a manager and was directed by a store clerk to the assistant manager. Patterson then identified himself to the assistant manager as a maintenance worker for the PLCB and asked whether the store's electricity and plumbing were in working order or if the store might otherwise be in need of repairs. The assistant manager became "very rude" to Patterson, so he exited the liquor store, entered his "state-owned van, and reported the assistant manager to his foreman over the phone." App. 11. Per his foreman's instruction, Patterson left the Eddystone store and drove towards another PLCB store in Newtown Square, Pennsylvania.

En route to the Newtown Square store, Patterson was stopped by the police and questioned about "robbing" the Eddystone store. *Id.* During the stop, an officer informed Patterson that the Eddystone assistant manager had called to report a "black guy" in a "state van" who was trying to "rob her store." App. 11-12.

Patterson filed a Complaint against the PLCB alleging race discrimination and violations of the Fourteenth Amendment's Equal Protection Clause, pursuant to 42 U.S.C. §§ 1981 and 1983. The PLCB filed a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), which the District Court granted upon a finding that the PLCB was entitled to Eleventh Amendment sovereign immunity from suit. Patterson appeals, arguing that the District Court erred in finding that the PLCB was an "arm" of the Commonwealth of Pennsylvania. Patterson contends that, in reaching its conclusion that the PLCB is immunized from suit under the Eleventh Amendment, the District Court improperly weighed this Court's three-factor test, established in *Fitchik v. N.J. Transit Rail Operations, Inc.*, 873 F.2d 655, 659 (3d Cir. 1989) (en banc).

## II.

The District Court had jurisdiction pursuant to 28 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over a District Court's dismissal of an action pursuant to Rule 12(b)(6). *Estate of Lagano v. Bergen Cty. Prosecutor's Office*, 769 F.3d 850, 853 (3d Cir. 2014). We review *de novo* whether an entity is entitled

3

to sovereign immunity. *Karns v. Shanahan*, 879 F.3d 504, 512 (3d Cir. 2018).

## III.

Though, by its terms, the Eleventh Amendment immunizes only "States" against private actions brought by citizens of other states, *see* U.S. Const. amend. XI, it is "well established" that suits brought by in-state litigants against "arms" of a state "may nonetheless be barred by the Eleventh Amendment." *Karns*, 879 F.3d at 512–13 (quoting *Edelman v. Jordan*, 415 U.S. 651, 663 (1974), and *Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 545 (3d Cir. 2007)); *see also Hans v. Louisiana*, 134 U.S. 1, 20 (1890).

A party is an "arm of the state" for sovereign immunity purposes when "the state is the real, substantial party in interest." *Ford Motor Co. v. Dep't of Treasury of Ind.*, 323 U.S. 459, 464 (1945), *overruled on other grounds by Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 623 (2002). "[T]he relationship between the State and the entity in question" is critical to this inquiry. *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997). We employ a three-factor test to determine an entity's sovereign immunity status: "(1) whether the payment of the judgment would come from the state; (2) what status the entity has under state law; and (3) what degree of autonomy the entity has." *Karns*, 879 F.3d at 513 (quoting *Bowers*, 475 F.3d at 546). We regard the three factors as "co-equal." *Benn v. First Judicial Dist. of Pa.*, 426 F.3d 233, 239–40 (3d Cir. 2005). Thus after assessing in which direction each factor points, "we balance them to determine whether an entity amounts to an arm of the State." *Maliandi*, 845 F.3d at 84.

Below, we will assess the factors and their relevant subfactors. Part III.A. considers whether the state or the PLCB funds payment of an adverse judgment; Part III.B. reviews whether state law treats the PLCB as an arm of the state; and Part III.C. examines the PLCB's autonomy relative to the state.

## A.

When analyzing the funding factor, we first ask "[w]hether the money that would pay the judgment would

4

come from the state." *Fitchik*, 873 F.2d at 659. To evaluate this question, we consider three subfactors: (1) a state's legal obligation to pay a money judgment entered against the entity; (2) whether the agency has money to satisfy the judgment; and (3) whether there are specific statutory provisions that immunize the state from liability for money judgments. *Id.; see also Maliandi*, 845 F.3d at 86. We evaluate each subfactor in turn, below.

**i.**

The first funding subfactor focuses on "whether the state treasury is *legally* responsible for the payment of a judgment." *Febres v. Camden Bd. of Educ.*, 445 F.3d 227, 233 (3d Cir. 2006) (emphasis added). Accordingly, if a state indemnifies an entity voluntarily, the funding factor will likely disfavor granting sovereign immunity. *See Maliandi*, 845 F.3d at 87. Pennsylvania is not legally obligated to pay for judgments entered against the PLCB. After the PLCB pays a judgment, the Governor may choose to reimburse the PLCB— but there is no legal obligation to do so. *See* 47 Pa. Cons. Stat. § 744-910 ("The State Treasurer is hereby authorized and directed to transfer such sums from the General Fund to the State Stores Fund as the Governor . . . shall direct."). Accordingly, this subfactor weighs definitively against granting the PLCB sovereign immunity.

The PLCB instead argues that this subfactor only slightly disfavors a finding of sovereign immunity. Appellee's Br. 19. Specifically, the PLCB contends that its funds effectively "morph into Commonwealth funds" because the funds are subject to a high level of oversight from state officials. *Id.* Therefore, an adverse judgment's practical effect would constitute a state legal obligation to keep the PLCB afloat. *Id.*

We do not agree. Although practical effects arguments have, on occasion, "enter[ed] [our] calculus," *Febres*, 445 F.3d at 236, such instances have been limited to situations where "Congress has put a proverbial 'gun to the head' of the State to sustain the entity even without a legal obligation." *Maliandi*, 845 F.3d at 87 n.7 (citing *Alaska Cargo Transp., Inc. v. Alaska R.R. Corp.*, 5 F.3d 378 (9th Cir. 1993) (holding that an adverse judgment against the state agency had the practical effect of

5

impacting the state's treasury because federal law effectively required Alaska to keep the entity operational); *Morris v. Wash. Metro. Area Transit Auth.*, 781 F.2d 218 (D.C. Cir. 1986) (finding that a judgment against the Washington Metropolitan Area Transit Authority would directly affect Maryland and Virginia's treasuries because of their practical financial commitments to the entity)).

Here, we find the PLCB's argument unavailing, as the state is not legally obligated to pay for an adverse judgment, and there is no legislative coercion for the state to do so. Though the practical effects argument is not convincing in terms of this subfactor, the state's high level of control over the PLCB is relevant to the third subfactor—the PLCB's autonomy—and, accordingly, we will discuss it below. *Fitchik*, 873 F.2d at 660 (reasoning that New Jersey's veto power over New Jersey Transit's operations indicated a lack of autonomy from the state, not financial dependency).

In sum, as the PLCB is responsible for the payment of judgments, and the state has no legal obligation to indemnify it, this subfactor points definitively against affording the PLCB sovereign immunity.

**ii**.

The second subfactor requires us to determine whether the entity has money to pay an adverse judgment, and whether "the entity has sources of funding aside from state appropriations" that could satisfy the judgment. *Maliandi*, 845 F.3d at 88; *accord Fitchik*, 873 F.2d at 660–62. We also consider the degree of control the state maintains over any funds it appropriates to the entity. *See Fitchik*, 873 F.2d at 661.

The PLCB obtains revenue from the sale of liquor, which is then deposited into the State Stores Fund, a "separate fund from the State Treasury." *Heppler v. Pa. Liquor Control Bd.*, No. 10-3430, 2011 WL 2881221, at *5 (E.D. Pa. July 18, 2011). Money in the State Stores Fund is appropriated by the Pennsylvania General Assembly to the PLCB for its daily operations, and for "otherwise administering and enforcing the Pennsylvania Liquor Control Act." 47 Pa. Cons. Stat. § 744–907. This includes the payment of judgments entered against the PLCB. *Heppler*, 2011 WL 2881221, at *5 (finding that a

6

"payment of a judgment against the PLCB would be paid out of the State Stores Fund"). In the event that the PLCB did not have sufficient funds to satisfy a judgment, it could "obtain sufficient funds by raising its revenues." *Id.*; *accord Christy v. Pa. Turnpike Comm'n*, 54 F.3d 1140, 1146–47 (3d Cir. 1995) (holding that the Pennsylvania Turnpike Commission could pay for a judgment through its "power to raise revenue levels by increasing the toll rates").

Alternatively, if the PLCB was unable to satisfy a judgment, the state could transfer funds to it as directed by the Governor; however, the PLCB would be required to reimburse the state "no[] later than thirty days after the end of such fiscal year or period." 47 Pa. Cons. Stat. § 744–911. Funds appropriated to the PLCB effectively operate as a loan, indicating that the state exerts some financial control over it. This control is, however, outweighed by the PLCB's ability to satisfy a judgment with its own source of revenue and to raise additional funds without significant state involvement. This demonstrates a level of financial independence not characteristic of an entity considered an arm of the state. Accordingly, this subfactor tilts away from a finding of sovereign immunity.

### iii.

The third subfactor instructs us to determine whether the state has immunized itself from the entity's debts. *Fitchik*, 873 F.2d at 659. If the state has absolved itself of responsibility, this suggests that the entity is not considered an arm of the state. *Maliandi*, 845 F.3d at 90.

There is no specific provision in the Liquor Code that immunizes the state from the PLCB's liabilities. When assessing this subfactor, the *Heppler* Court found that the PLCB is likely expected to pay off its own debts because there is a provision in the Liquor Code, *see* 47 Pa. Cons. Stat. § 744-910, that instructs the PLCB to transfer any surplus revenue to the state, "indicating solvency beyond its operating budget." *Heppler*, 2011 WL 2881221, at *5. Moreover, any temporary loans to the PLCB must be repaid within the fiscal year. *Id.*; *see* 47 Pa. Cons. Stat. § 744-911. Thus, this subfactor weighs slightly against affording immunity.

7

In summary, because the state is not legally responsible for adverse judgments, the PLCB can satisfy a judgment using revenue obtained from liquor sales, and the PLCB is responsible for its own debts, the funding factor weights definitively against granting the PLCB sovereign immunity.

**B**.

The second factor requires us to examine whether state law treats the PLCB as an arm of the state. *Fitchik*, 873 F.2d at 659. We consider four subfactors: (1) how the law treats the agency generally; (2) whether the agency is separately incorporated; (3) whether the agency can sue and be sued in its own right; (4) and whether it is immune from state taxation. *Id.*

**i**.

Pennsylvania statutory and case law indicate that the PLCB is considered an arm of the state for sovereign immunity purposes. First, Pennsylvania's state sovereign immunity statute grants the PLCB state sovereign immunity except under specific circumstances. *See* 42 Pa. Cons. Stat. § 8522(b)(7) (excepting sovereign immunity for the sale of liquor to "any minor, or to any person visibly intoxicated, or to any insane person, or to any person known as an habitual drunkard, or of known intemperate habit"); *see also Heppler*, 2011 WL 2881221, at *6 (citing that the "PLCB is an agency which is entitled to sovereign immunity pursuant to the state sovereign immunity statute, 42 Pa. Cons. Stat. § 8522(a)").

Furthermore, Pennsylvania state courts have consistently found that the PLCB is an arm of the state entitled to state sovereign immunity. *See Merchs.' Warehouse Co. v. Gelder*, 36 A.2d 444, 448 (Pa. 1944) ("The [PLCB] is an agency of this Commonwealth created by it for the purpose of carrying out a state function and for this reason is clothed with immunity from suit."); *Biello v. Pa. Liquor Control Bd.*, 301 A.2d 849, 852 (Pa. 1973) (reaffirming the holding in *Gelder*); *Brey v. Commonwealth*, 381 A.2d 228, 229 (Pa. Commw. Ct. 1978).

Finally, in *Karns*, we considered the extent to which New Jersey Transit officers are vested with "general authority, without limitation, to exercise police powers." *Karns*, 879 F.3d

8

at 517. We concluded that "New Jersey law regards NJ Transit as exercising the official police powers of the state." *Id.* Here, the PLCB was created under the Liquor Code as "an exercise of the police power of the Commonwealth for the protection of the public welfare, health, peace and morals of the people of the Commonwealth." 47 Pa. Cons. Stat. § 1-104(a). This too supports the view that Pennsylvania law regards the PLCB as an arm of the state.

Though general treatment under state law is informative, it is not dispositive; this subfactor "does not necessarily overshadow the other relevant subfactors." *Cooper v. Se. Pa. Transp. Auth.*, 548 F.3d 296, 308 (3d Cir. 2008). Thus, we note that the PLCB is generally treated as an arm of the state under state law, and continue our analysis of the second factor.

**ii**.

Next, we review the entity's corporation status. When an entity is separately incorporated, this weighs against affording the entity sovereign immunity. *Febres*, 445 F.3d at 230–31.

The PLCB argues that it does not have a separate corporate existence because the Liquor Code does not explicitly state whether the PLCB is separately incorporated. Appellee's Br. 20. Patterson argues, however, that the PLCB is separately incorporated because the Liquor Code defines it as an "independent administrative board." Appellant's Br. 11 (quoting 47 Pa. Cons. Stat. § 2-201).

We have repeatedly held that an entity is separately incorporated when there is statutory language explicitly stating the same. *See Cooper*, 548 F.3d at 307 (citing 74 Pa. Cons. Stat. § 1711(a)) (finding an entity to be separately incorporated under its enabling statute, which stated that it has "a separate corporate existence"); *Febres*, 445 F.3d at 230 (citing N.J. Stat. Ann. § 18A:10-1) (considering a New Jersey entity separately incorporated based on a state statute's language stating "under the supervision of a board of education, which shall be a body corporate"); *Fitchik*, 873 F.2d at 663 (citing N.J. Stat. Ann. § 27:25-4(a) (creating NJ Transit as "a body corporate and politic with corporate succession")).

9

Here, there is no explicit statutory provision stating that the PLCB is separately incorporated, and Patterson does not offer any evidence as to why the PLCB being an "independent agency" is relevant to its incorporation status. Therefore, we find Patterson's argument unconvincing, and that this subfactor favors a finding of sovereign immunity.

**iii**.

The Liquor Code does not give the PLCB power to sue or be sued as a separate entity from the Commonwealth, setting the PLCB apart from many other entities created by Pennsylvania law. *Compare* 47 Pa. Cons. Stat. § 2-207 (demonstrating that enumerated powers of the PLCB do not include ability to sue or be sued); *with* 4 Pa. Cons. Stat. § 1202(b)(3) (listing capacity to sue or be sued under general powers of Pennsylvania Gaming Control Board); *and* 36 Pa. Cons. Stat. § 652d (powers of Pennsylvania Turnpike Commission include ability to sue and be sued); *and* 40 Pa. Cons. Stat. § 4103 (stating that the Pennsylvania Interstate Insurance Product Regulation Compact can "bring and prosecute legal proceedings or actions in its name as the Commission"). Accordingly, the fact that the Liquor Code does not state that the PLCB can sue and be sued as its own agency indicates that PLCB does not have this power.

Patterson argues that the PLCB has the ability to sue and be sued as its own entity due to the Supreme Court of Pennsylvania's holding in *Pennsylvania Liquor Control Board. v. Rapistan, Inc.*, 371 A.2d 178 (Pa. 1976). Appellant's Br. 10-11. This argument is misguided. In *Rapistan,* the court stated that the "PLCB could institute an action before [a Commonwealth Court]. However, [the court] stated that the suit should be brought by the Commonwealth and not by the individual agency." *Rapistan*, 371 A.2d at 185 n.10. Thus, it is clear that *Rapistan* did not permit the PLCB to bring suit as an individual agency; rather, *Rapistan* allowed the PLCB to sue under the name of Commonwealth.

Thus, we find that this subfactor also leans towards a finding of sovereign immunity.

10

**iv.**

There is no statutory indication that the PLCB is immune from state taxation. *Compare* 47 Pa. Cons. Stat. § 8-803 (failing to discuss taxation requirements under the general duties of the PLCB), *with* 36 Pa. Cons. Stat. § 653(m) (stating that the Pennsylvania Turnpike Commission "shall not be required to pay any taxes or assessments on any property acquired or used by it."). The PLCB does not, however, pay taxes on its revenues, property, or bonds, "suggest[ing] that Pennsylvania state law considers the PLCB an arm of the state." *Heppler*, 2011 WL 2881221, at *7. Thus, this subfactor factor slightly favors sovereign immunity.

**v.**

In sum, three of the four subfactors only slightly tilt toward granting immunity: separate incorporation, power to sue and be sued, and immunity from state taxes. The remaining subfactor, consideration of the PLCB as an arm of the state under Pennsylvania statutory and case law, tips the balance in favor of granting the PLCB sovereign immunity under the second factor.

**C.**

The third factor instructs us to examine the degree to which an entity is autonomous from the state, while "focusing on the entity's governing structure and the oversight and control exerted by a State's governor and legislature." *Maliandi*, 845 F.3d at 96 (citing *Febres*, 445 F.3d at 231–32; *accord Fitchik*, 873 F.2d at 663–64).

There are numerous statutory provisions in the Liquor Code that indicate the PLCB is subject to substantial oversight from the state. First, the executive and legislative branches have significant control over the PLCB in terms of the composition of the Board. *See* 47 Pa. Cons. Stat. §§ 2-201–204. For example, the Governor appoints the members of the Board with consent of the Senate, *id.* § 2-201; appoints the chairman of the Board, *id.* § 2-203; and can appoint a secretary of the Board, *id.* § 2-204.

11

Additionally, the state imposes several constraints on the members of the Board: the Liquor Code proscribes how long they may serve on the Board, *id.* § 2-201; denotes how old Board members must be, *id.* § 2-202(a); prohibits members from holding any other office or position while serving on the Board, *id.* § 2-202(b); and requires Board members to follow the State Public Official and Employee Ethics Law, *id.* § 2-206.1.

The state also prescribes the general powers of the Board and specifies how it shall operate, including the general powers of the Board; *id.* § 2-207; the types of regulations the PLCB is permitted to create are predefined by state statute; *id.* § 2-208; and the state directs the PLCB to transfer two percent of its annual profits from the sale of liquor to the Department of Health; *id.* § 8-802(c).

The PLCB does have some autonomy, however, in that it has the power to grant and revoke liquor licenses, lease buildings for liquor stores, and make certain regulations that it deems necessary for the efficient administration of the Liquor Code. *Heppler*, 2011 WL 2881221, at *7. Nonetheless, these powers were ascribed by the state and are still subject to the Administrative Code. 47 Pa. Cons. Stat. § 2-206.

In sum, the PLCB is subject to substantial oversight from the state. Therefore, we find that this factor weighs definitively in favor of finding that the PLCB is an arm of the state.

## D.

We now balance the three factors to determine whether the PLCB is an arm of the state. *Maliandi*, 845 F.3d at 84. Again, it is important to note that "courts should not simply engage in a formulaic or mechanical counting up of the factors." *Karns*, 879 F.3d at 513–14. Rather, we must assess "the qualitative strength of each factor in the context of the circumstances presented." *Id.* at 519.

The funding factor strongly weighs against affording sovereign immunity, as the PLCB has significant financial independence from the state. The "status under the law" factor, though less definitive, tips in favor of immunity because Pennsylvania statutory and case law overwhelmingly views the

12

PLCB as an arm of the state. The autonomy factor weighs strongly in favor of immunity because the PLCB is subject to substantial oversight and control from the state's executive and legislative branches. On balance, the first and third factors effectively cancel each other out, as they point in opposite directions. The PLCB's status under Pennsylvania law tips the scale in favor of the PLCB being considered an arm of the state. We therefore conclude the PLCB is an arm of the state that is entitled to Eleventh Amendment sovereign immunity.[2]

\* \* \*

For the foregoing reasons, we will affirm the order of the District Court granting the PLCB's motion to dismiss.

---

[2] In so holding, Patterson's claim fails for a separate reason: a state, including an entity that is an arm of the state, is not a "person" under 42 U.S.C. § 1983, and therefore cannot be sued for damages under that statute. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 64, 70-71 (1989).