**SIATA INTERNATIONAL U.S.A. INC.**

v.

**INSURANCE COMPANY OF NORTH AMERICA.**

Civ. A. No. 70–3376.

United States District Court, E. D. Pennsylvania.

July 23, 1973.

Steven J. Stein, and Steven S. Miller, Philadelphia, Pa., for plaintiff; Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., Proskauer, Rose, Goetz & Mendelsohn, New York, N. Y., of counsel.

Joseph Head, Philadelphia, Pa., for defendant; Swartz, Campbell & Detweiler, Philadelphia, Pa., of counsel.

## MEMORANDUM

CLARY, District Judge.

This case is presently before the Court for disposition of defendant's motion for judgment notwithstanding the verdict, or in the alternative, motion for new trial.

The resolution of this case depends primarily, if not exclusively, upon the interpretation of the condition of a sure-

ty bond issued by the defendant to the plaintiff which condition reads as follows:

Now, therefore, the condition of the above obligation is such, that if the above bounden Principal shall repay to the above Named Obligee *the lesser of the total sum of One Hundred Thousand and no/100 Dollars in the event of the non-delivery of all of the 1,250 vehicles; or an amount equal to Eighty Dollars ($80.00) per vehicle for Non-Delivery of each vehicle less than the total of 1,250 vehicles contracted for,* then this obligation is void; otherwise to be and remain in full force and effect. (Emphasis supplied.)

The facts of the case are as follows. Plaintiff, Siata International, U.S.A. Inc., (hereinafter Siata U.S.A.) was engaged in the business of importing automobiles from Italy to the United States. The automobile, Siata Spring Model, was manufactured by Siata Auto S.P.A. (hereinafter Siata S.P.A.), an Italian company located in Turin, Italy. A contract was arranged between Siata U.S.A. and Siata S.P.A. (Plaintiff's Exhibit No. 2) whereby Siata S.P.A. would deliver to plaintiff's warehousemen in Turin, Italy 1,250 cars in specified monthly installments. Payment was made by letter of credit through State Funding Corporation. As part of the agreement Siata S.P.A. was to give to Siata U.S.A. a performance bond covering a total amount of $100,000.00, corresponding to $80.00 for each car not delivered, to assure the performance of Siata S.P.A.'s contractual obligations to plaintiff. Subsequently, Siata S.P.A. breached the contract when it failed to deliver all the cars to plaintiff's warehousemen. Plaintiff made a proper demand on the Italian company for the money due on the contract. (Plaintiff's Exhibit No. 8). No action was taken by the Italian company, and plaintiff made a demand on defendant surety, Insurance Company of North America, in order to enforce its contractual rights under the terms of the surety bond.

(Plaintiff's Exhibit No. 5). Defendant refused to pay and plaintiff brought this action. On April 25, 1973, a jury trial was held. Plaintiff proved non-delivery of a certain number of automobiles and a verdict was directed in favor of the plaintiff as to liability and against the defendant. The question, of how many cars were not delivered, was submitted to the jury, and the jury determined the number to be 589.

In defendant's motion for judgment notwithstanding the verdict (Docket Paper No. 29) and his motion for a new trial, (Docket Paper No. 30), defendant states a substantial number of reasons for granting the motions. However, in the brief in support of said motions, the plaintiff has pressed a few and they are as follows: (1) The Court's interpretation of the bond in suit was erroneous; (2) the Court refused to submit to the jury issues of variance and repayment; (3) the Court failed to give the jury any guidance in its determination of the issue of delivery of automobiles; (4) the Court erred in admitting the testimony of Mr. Benjamin over defendant's objection; (5) the Court erred in admitting plaintiff's Exhibits Nos. 3 and 9; and (6) plaintiff failed to prove diversity of citizenship. These contentions will be dealt with seriatim.

■ Since this is a diversity case, however, the applicable substantive state law must be determined. The conflict of law rules to be applied by the Federal courts must be those prevailing in the Pennsylvania state courts. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), Miller, Inc. v. Needham, 122 F.2d 710 (3rd Cir. 1941). The Pennsylvania Supreme Court follows the modern approach and looks to the law of the place with the most significant relationship to the parties and the transaction, on each issue, or the "center of gravity" of the contract. Neville Chemical Company v. Union Carbide Corporation, 422 F.2d 1205 (3rd Cir. 1970); Griffith v. United Air Lines, Inc., 416 Pa. 1, 203 A.2d 796 (1964). Now to apply this test to

the facts of this case. The surety bond was delivered and accepted by Siata S. P.A. in Italy and the performance of the principal contract was to take place there. Normally these contacts would be of great significance, however, in this case Italy's interest in a suit brought in a United States court over a surety bond involving two companies located in the United States is minimal. New Jersey's only relationship to the transaction is that it is the plaintiff's place of incorporation. New York's interest is greater since it is plaintiff's principal place of business, and the surety bond was eventually delivered to Siata U.S.A. in New York. However, the relationship of New Jersey or New York to the transaction is also minimal when compared to Pennsylvania. Defendant's principal place of business and place of incorporation is Pennsylvania; the bond in suit (an insurance contract) was drafted and executed by defendant in Pennsylvania; demand was made on defendant in Pennsylvania and the claim was to be processed here; and presumably, although the bond does not specify, the payment was to be made in Pennsylvania. Finally, of some importance, the forum is Pennsylvania. Because of these substantial contacts with Pennsylvania, Pennsylvania does have the *most significant* relationship to the parties and the transaction and so Pennsylvania law will govern where appropriate.

 Plaintiff's first contention is that the Court's interpretation of the bond is erroneous. · It is well settled that construction and interpretation of a surety contract is for the court. Seaboldt v. Pennsylvania Railroad Co., 290 F.2d 296 (3rd Cir. 1961); Thommen v. Aldine Trust Co., 302 Pa. 409, 153 A. 750 (1931); Bangor Peerless Slate Co. v. Bangor Vein Slate Co., 270 Pa. 161, 113 A. 190 (1921). The object of interpretation is to determine the intent of the parties, Myers v. Eckerson, 288 Pa. 468, 136 A. 785 (1927), as gathered from all words and clauses used and taken as a whole, with due regard to surrounding circumstances. New Holland Dairies, Inc. v. Regent Dairy Products Corporation, 115 Pa.Super. 87, 174 A. 664 (1934). Individual words, therefore, must be considered in connection with the rest of the contract. If the language used by the parties in writing the contract is clear, unambiguous, and susceptible of but one meaning, that language controls, Hesse v. Traveler's Ins. Co., 299 Pa. 125, 149 A. 96 (1930), and liability should not be imposed beyond those terms.

 Finally, contracts written by surety companies acting for compensation are regarded as those of insurance. Consequently, the rights and liabilities of the parties are governed by the rules of construction applicable to contracts of indemnity or insurance, rather than by the rule strictissimi juris, which determine the rights of ordinary sureties who become such without pecuniary consideration. Sokoloff v. Fidelity & Casualty Co. of New York, 288 Pa. 211, 135 A. 746 (1927). Pennsylvania courts, therefore, construe a contract of a surety company, acting for compensation, most strongly against the surety and in favor of the indemnity which the obligee has reasonable grounds to expect. City of Philadelphia v. National Surety Co., 315 Pa. 356, 173 A. 181 (1934); Brown v. Title Guaranty & Surety Co., 232 Pa. 337, 81 A. 410 (1911).

 The language of the bond issued by the defendant in this case is clear and unambiguous. The bond, read as a whole, means just what it says; that it is an obligation entered into by the defendant to pay $80.00 a car for all undelivered cars up to 1,250 cars. It is a performance bond the purpose of which was to insure to plaintiff that its manufacturer, Siata S.P.A., would live up to its obligations to deliver the automobiles as required. Siata S.P.A. failed to live up to its obligations, and defendant surety became liable for all undelivered cars. Consequently, there was no error in the Court's ruling at the time of trial, and all instructions to the jury on this matter were correct.

Secondly, defendant contends that the Court erred in refusing to submit to the jury issues of variance, and payment of the principal's obligation. These contentions will be taken one at a time in their stated order.

■ Defendant contends that the contract contemplated by the bond differed in material respects from the contract actually entered into between Siata U.S.A. and Siata S.P.A. and that these substantial variations prejudiced the defendant. However, no evidence was offered by defendant in support of this position. Under Pennsylvania law, defendant must establish by a preponderance of the credible evidence not only that there was a departure from the terms of the insurance contract, but that this departure was both material and prejudicial to its rights. Plummer v. Wilson, 322 Pa. 118, 185 A. 311 (1936); Phillips v. American Liability & Surety Co., 309 Pa. 1, 162 A. 435 (1932). The burden of proof rests on the party who asserts the affirmative of an issue. Sokoloff v. Fidelity & Casualty Co. of New York, 288 Pa. 211, 135 A. 746 (1927). Even assuming, arguendo, that defendant's exhibits establish a material alteration, there was no evidence, beyond counsel's legal arguments, tending to suggest prejudice to the defendant. There need be no instruction on an issue not presented by the pleadings nor effectively raised at the trial. Nor need there be a charge on a given matter, whether or not raised in the pleadings, if it is not supported by the evidence. Smith v. Lauritzen, 356 F.2d 171, (3rd Cir., 1966). Consequently there was no error when the Court refused to instruct the jury on this issue.

■ The same result must be reached with the defense of payment by the principal. It is true that this is a valid defense for a surety in a suit by the obligee, and would discharge the surety pro tanto. See Arabian American Oil Co. v. Kirby & Kirby, Inc., 171 Pa.Super. 23, 90 A.2d 410 (1952); Levin v. Northwestern National Bank, 154 Pa.Super. 94, 35 A.2d 769 (1943). However, the burden of proof again rested with the defendant to establish this defense, Cauffiel v. Glenn, 345 Pa. 181, 27 A.2d 30 (1942), and no evidence was offered in support of it. Mr. Benjamin, the man in charge of arranging the letters of credit, testified that no other funds were ever advanced to Siata U.S.A. from Siata S.P.A. other than by car credits (N.T. 48–49), and that the car credits were determined to be $80.00 pursuant to the bond in suit, and not $170.00 as claimed by defendant. (N.T. 75). The record is again totally barren by any evidence supporting defendant's assertions. Consequently, there was no error in refusing to instruct the jury on this point.

It should also be noted at this point that defendant had an ample opportunity to present his evidence at the close of plaintiff's case, but did not offer any at that time (N.T. 90). The Court would have been more than willing to listen to the evidence presented by the defendant in support of his legal arguments. Failing to do so at that time, defendant will not now be heard to say that he was prejudiced at the time of trial. Defendant simply had no evidence to support his contentions.

■ Third, defendant ° contends that the Trial Judge failed to give to the jury any guidance for its determination of how many vehicles were delivered by Siata S.P.A. It is true that the trial judge must "instruct the jurors, fully and correctly, on the applicable law of the case, and guide, direct, and assist them toward an intelligent understanding of the legal and factual issues involved in their search for truth." 3 Wright & Miller, Federal Practice and Procedure, § 2556 (1971). See Petrole v. George A. Fetter, Inc., 411 F.2d 5 (3rd Cir., 1969). This duty was fulfilled here. During the trial the jurors heard the testimony of certain witnesses describing the business transactions involved in this case, the payment of the automobiles by letters of credit (Plain-

tiff's Exhibits 7A through 7G), and a recap of those letters of credit (Plaintiff's Exhibit No. 6). These exhibits were admitted into evidence as proof of delivery of the automobiles in Italy after having been adequately authenticated, and were given to the jury to study in their deliberations. Each letter of credit plainly states the number of cars covered by that letter of credit, and the place where the cars were to be delivered. In addition, the invoices relating to each letter of credit, and attached thereto, indicate the chassis number of each car delivered and that the delivery was to be in Turin, Italy. Finally, the fourth column of the recap sheet, said sheet being a flow chart of all the letters of credit, indicates very succinctly the number of cars delivered. By the simple process of addition, the jurors, all being capable individuals, could easily determine the number of automobiles delivered. The adequate description of the business transactions, and the almost self-explanatory exhibits which were taken out with the jury were sufficient guidance to aid them in their deliberations.

Defendant contends that the impact of defendant's Exhibit Number 4 was ignored, and that document indicates that only 169 automobiles were missing. Upon closer examination one would notice that defendant's Exhibit Number 4 is actually plaintiff's Exhibit Number 6 and it indicates that 589 vehicles were missing. If the jury wished to rely on defendant's own exhibit, it could have determined that 589 vehicles were actually missing.

Defendant's fourth objection is that the Court erred in admitting the testimony of Mr. Benjamin because it was hearsay evidence and there was no opportunity for cross-examination. Mr. Benjamin was employed by State Funding Corporation and it was his duty to arrange the letters of credit for Siata U.S.A. These letters of credit were used to insure that Siata S.P.A. would be paid for all cars delivered to plaintiff's warehousemen. As cars were delivered to the warehousemen in Italy, and he found them in good order, an Italian bank was instructed to pay Siata S.P.A. The Italian bank would then notify State Funding Corporation's bank, Marine Midland Bank, and State Funding Corporation's account would be charged for all deliveries.

Title 28 U.S.C.A. Section 1732, *Record made in regular course of business; photographic copies*, states:

(a) In any court of the United States and in any court established by Act of Congress, any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event, shall be admissible as evidence of such act, transaction, occurrence, or event, if made in regular course of any business, and if it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence, or event or within a reasonable time thereafter.

All other circumstances of the making of such writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but such circumstances shall not affect its admissibility.

Mr. Benjamin, the person who arranged the letters of credit, was certainly in the position to testify as to their authenticity. He laid the proper foundation by testifying that the records were made in the regular course of business (N.T. 28–31). In addition, all participants in the chain of information, from Mr. Benjamin to the warehousemen, were acting routinely under a duty of accuracy in supplying the proper information. In short, all were acting in the regular course of business. As a result, the guaranty of trustworthiness was present, and the evidence was admissible for the purpose of showing the event of delivery. The fact that Mr. Benjamin lacked personal knowledge of

the transaction, or that the warehousemen supplied false information for the last two shipments only affected the weight to be given this testimony, and not the admissibility. Consequently, the weight to be given this evidence was for the jury when determining the question of how many automobiles were actually delivered. After a thorough deliberation the jury determined the number to be 661. The theory behind this section is to avoid the necessity of producing all the people who actually participated in the transaction and then tracing through witnesses every step from payment to book entry. United States v. Re, 336 F.2d 306 (2d Cir.), cert. denied, 379 U.S. 904, 85 S.Ct. 188, 13 L.Ed.2d 177 (1964). Defendant would want plaintiff to do just that, and in today's complicated business world, this is both impossible and unnecessary.

Next, the defendant charges that the Court erred in admitting plaintiff's Exhibits Numbers 3 and 9. Plaintiff's Exhibit Number 3 is a document entitled "Agreement For Performance Bond" and it is signed by representatives of Siata U.S.A. and Siata S.P.A. It is true, as defendant points out, that the document is not the actual contract in suit, but it is one of the documents relied on by the parties in obtaining the performance bond. In this respect it is both relevant and material to the transaction involved in this case and, therefore, there was no error in admitting it into evidence. See Schabo v. Mercer County, State of New Jersey, by Board of Chosen Freeholders, 333 F.2d 971, 974 (3rd Cir. 1964). Looking at the entire record, the fact that the document is relevant to the transaction and the jury did not consider it in its deliberation, any possible error caused by failure to properly identify the document at the time of trial was harmless.

Plaintiff's Exhibit Number 9 is a foreign document and was offered to prove that Siata S.P.A. was in bankruptcy proceedings. Defendant contends that this documentary proof of the Italian bankruptcy was "grossly incompetent." However, the document was properly evidenced by Italian court officials, the Clerk of Court in Turin, and the Republic's Attorney in Turin, and therefore, was properly admitted at trial.

Defendant's sixth and final argument is that proof of diversity of citizenship was not established by the plaintiff. In paragraph 1 of the amended complaint (Document No. 19) it is alleged that plaintiff is a corporation organized under the laws of the State of New Jersey, having its principal place of business in Jamaica, Queens, New York. It is also alleged that defendant is a corporation organized under the laws of the Commonwealth of Pennsylvania, having its principal place of business in Philadelphia, Pennsylvania. Defendant admits these allegations in paragraph one of the amended answer (Document No. 20). It is true that defendant's admission in the answer does not waive the defense of lack of jurisdiction and that it may be raised at any time. Nevertheless, an empty assertion by the defendant in a post-trial motion that there might not be diversity, is not sufficient to challenge the jurisdiction and put plaintiff to the test of supporting the allegations of jurisdiction. A challenge in the appropriate manner may have had that result, but this was not the case here. See Jamison v. Pennsylvania Power Company, 172 F.Supp. 563 (W.D.Pa., 1959).

### ORDER

And now, to wit, this 23rd day of July 1973, for the reasons set forth above, it is Ordered, Adjudged and Decreed that defendant's motion for a judgment notwithstanding the verdict or, in the alternative, for a new trial be and they are hereby Denied.