**KNECHT, INC.**

v.

**UNITED PACIFIC INSURANCE COMPANY, Appellant.**

**No. 88–1280.**

United States Court of Appeals, Third Circuit.

Argued August 29, 1988.

Decided Oct. 24, 1988.

Rehearing and Rehearing In Banc Denied Nov. 17, 1988.

---

Howard M. Levinson (argued), Robert N. Gawlas, Jr., Rosenn, Jenkins & Greenwald, Wilkes–Barre, Pa., for appellant.

Lawrence A. Borda (argued), Andrew Fylypovych, Edward M. Napierkowski, Harvey, Pennington, Herting & Renneisen, Philadelphia, Pa., for appellee.

Before SLOVITER, GREENBERG and COWEN, Circuit Judges.

OPINION OF THE COURT

GREENBERG, Circuit Judge.

This matter is before the court on appeal by defendant United Pacific Insurance Company from an order denying its motion pursuant to Fed.R.Civ.P. 59(e) to alter or amend a summary judgment entered in favor of plaintiff Knecht, Inc. and from an order for attorney's fees in this action on a labor and material payment bond. The district judge ruled on cross-motions for summary judgment that Knecht was entitled to recover on the bond and thus our scope of review on this issue is plenary. *See Goodman v. Meade Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976), *cert. denied* 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). We will affirm the summary judgment but will reverse the order for attorney's fees.

The undisputed facts leading to this appeal are as follows. On November 19, 1983

Knoll International, Inc., as owner, entered into a contract with Sordoni Construction Co., as contractor, for the construction of a new assembly/shipping facility adjacent to Knoll's plant in East Greenville, Montgomery County, Pennsylvania. This was a substantial project with a maximum cost to Knoll of $14,700,000 and, not surprisingly, the contract documents were complex. They provided for protection of Knoll from lien claims and also set forth that "[i]f requested by Owner [Knoll], Contractor [Sordoni] shall, at Owner's cost, provide surety bond or bonds (a) to assure the timely performance of the Work in full compliance with the Final Drawings and Specifications for the Project and (b) to assure that all labor, materials, equipment and supplies incorporated into the Work or employed in connection therewith will be paid for in full. Such surety bond or bonds will be issued by sureties, in amounts and on terms acceptable to Owner and in compliance with the laws of the State of Pennsylvania."

On October 28, 1983, in anticipation of the execution of the contract, Knoll and Sordoni made a stipulation barring lien claims against the property by Sordoni and any subcontractor, materialman, workman or any other person for any labor or material supplied on the project. This stipulation was filed in the office of the Montgomery County Prothonotary on November 2, 1983, apparently pursuant to section 402 of the Pennsylvania Mechanics' Lien Law of 1963, Pa.Stat.Ann. tit. 49, § 1402 (Purdon 1965).

On November 21, 1983 Sordoni and United, respectively as principal and surety, executed a labor and material payment bond binding themselves jointly and severally to Knoll for $14,700,000. The condition of the bond, which incorporated the Knoll–Sordoni contract, was that if Sordoni "shall promptly make payment to all claimants as hereinafter defined, for all labor and material used or reasonably required for use in the performance of the Contract, then this obligation shall be void; otherwise it shall remain in full force and effect...." A claimant was defined in the bond as a person with a direct contract with the principal on the bond, i.e., Sordoni, or with a subcontractor of the principal, for labor and material used or reasonably required for performance of the contract. The bond further provided that the principal and surety agreed jointly and severally that every unpaid claimant "may sue on this bond for the use of the claimant, prosecute the suit to final judgment for such sum or sums as may be justly due claimant, and have execution thereon. The owner, [Knoll] shall not be liable for the payment of any costs or expenses of any such suit."

On September 13, 1984 Sordoni and W.J. Ambrose, Inc. entered into a subcontract incorporating the Knoll–Sordoni contract and providing for Ambrose to perform the heating, ventilating and air conditioning work on the Knoll project. The Sordoni–Ambrose subcontract included Article 19.1 which provided that:

ASSIGNMENT AND SUBCONTRACTING.

Neither this Agreement nor any monies due or to become due hereunder shall be assignable without the prior written consent of the Contractor [Sordoni] nor shall the whole or any part of the Work be subcontracted without like prior written consent. Any such assignment or subcontracting without such prior written consent shall be void and of no effect and shall vest no right or right of action in the assignee or sub-subcontractor against the Contractor. The Contractor's consent to any assignment or subcontracting shall not relieve the Subcontractor [Ambrose] of any of its agreements, duties, responsibilities or obligations under this Agreement and the other Contract Documents and the Subcontractor shall be and remain as fully responsible and liable for the defaults, neglects, acts and omissions of its assignees and sub-subcontractors and all persons directly or indirectly employed by them as it is for its own defaults, neglects, acts and omissions and those of its own officers, servants and employees. The Subcontractor shall bind each of its permitted sub-subcontractors to all of the

terms, provisions and covenants of this Agreement and the other Contract Documents with respect to permitted subcontracted portions of the Work. The Contractor's consent to any subcontracting shall not be deemed to create any contractual or third party beneficiary relationship between the Contractor and any sub-subcontractor to whom the Work, or any portion thereof, is subcontracted, and shall not vest any right or right of action in such sub-subcontractor against the Contractor or the Owner [Knoll].

On October 18, 1984 Ambrose entered into a sub-subcontract with Knecht to perform sheet metal work on the Knoll project. The Ambrose–Knecht contract incorporated the Sordoni–Ambrose contract which was referred to as the "principal contract" and provided that Knecht was bound by the provisions of the principal contract.[1]

The parties agree that work went forward on the project and payments were made to Sordoni by Knoll which in turn paid Ambrose. Ambrose, however, defaulted in its obligations to Knecht by failing to pay $134,784 due Knecht even though Ambrose requested and received payment for Knecht's work. Ultimately, Knecht and three other creditors of Ambrose filed an involuntary petition in bankruptcy against Ambrose.

On May 1, 1986 Knecht brought this diversity action under Pennsylvania law against United on the bond. The parties filed cross-motions for summary judgment and on October 9, 1987 the district judge, apparently without opinion, entered an order denying United's motion and granting Knecht's. The order also recited "that judgment is entered in favor of the plaintiff and against the defendant." United then moved under Fed.R.Civ.P. 59(e) to alter or amend the judgment but this motion was denied by order of November 18, 1987 which also provided that United was to pay Knecht $134,784 with interest and that a hearing would be later held to assess attorney's fees.[2] On December 7, 1987 the judge took testimony on the issue of attorney's fees. On March 16, 1988 the judge entered an order for $48,432.84 for attorney's fees, the order reciting that it was predicated on the language of the bond allowing for recovery for all "sums ... justly due." Thus, in the judge's view unless Knecht's fees were allowed Knecht "would not be made whole" and would not recover all sums justly due. This appeal followed.

Leaving aside the award of attorney's fees, it might be wondered on the basis of our recitation what issue could be raised by United on this appeal. It is, after all, clear that United and Sordoni in the bond agreed with Knoll that a claimant could bring an action against them jointly or severally on the bond for labor and materials supplied on the project. There is no doubt that Knecht performed the services and supplied the materials for which it seeks recovery and is a claimant as defined in the bond, as it had a sub-subcontract with Ambrose which was a subcontractor of Sordoni. United does not contend otherwise nor does it challenge Knecht's computation of its claim or suggest that Knecht is procedurally barred from bringing this case. While it is true that Knecht as a sub-subcontractor was precluded by the contract

---

1. The Ambrose–Knecht contract was on a printed Ambrose form and provided that Ambrose was entering its order for materials, equipment and/or services to be performed pursuant to the contract documents prepared by the architect and engineer as part of the "contract between W.J. AMBROSE, INC. and Knecht, Inc. (hereinafter referred to as PRINCIPAL CONTRACT) and hereby become a part of the Contract as if set forth at length attached hereto." United contends that notwithstanding this reference to the Ambrose–Knecht contract, it was the Sordoni–Ambrose contract which was incorporated. Knecht disputes this, contending that the Ambrose–Knecht contract means what it says.

While undoubtedly there is a dispute of fact on this point, for purposes of this appeal we accept United's contention which seems to be accurate as under Knecht's interpretation the Ambrose–Knecht contract incorporated itself. Thus, in view of our result, the dispute of fact is not material.

2. The judge also ordered that a hearing would be held on Knecht's claim for punitive damages but this claim was later dismissed on United's motion. Knecht has not cross-appealed from the order denying punitive damages.

documents from asserting a lien against the property and, along with other possible claimants, as a matter of law by the filing of the stipulation against liens in the prothonotary's office, nothing in the bond in any way conditioned a claimant's right to claim under it on its right to assert a lien.[3] Finally, while the Sordoni–Ambrose agreement limited the right of a sub-subcontractor to make a claim against Sordoni, this agreement made no reference to the bond and by its express terms never prejudiced the right of a sub-subcontractor to bring an action against United.

■ Accordingly, the facts seem to point to the same result as that reached in *Pennsylvania Supply Co. v. National Casualty Co.*, 152 Pa.Super. 217, 31 A.2d 453 (1943). There the Superior Court of Pennsylvania held that a materialman could bring an action against a surety on a bond in which a building contractor was the principal and the owner was the obligee, inasmuch as the bond incorporated the building contract and the contract required that the contractor-principal pay for the materials used on the project. The court observed that "[w]hat may have prompted the obligee to require protection for third parties, also is unimportant. She was protected by the stipulation against liens and her motives may have been altruistic or even sentimental, without affecting the obligation of the surety." 152 Pa.Super. at 221, 31 A.2d at 456. Here, too, the owner, Knoll, for reasons which are not our concern obtained protection for sub-subcontractors. Similarly, the Supreme Court of Pennsylvania in *Dravo–Doyle Co. v. Royal Indemnity Co.*, 372 Pa. 64, 92 A.2d 554 (1952), made it clear that if a subcontract specifically requires a subcontractor to pay the materialmen, a surety on the subcontract will be liable to an unpaid materialman. In *Dravo–Doyle*, however, there was no such promise as the subcontractor's obligation under the subcontract was limited to satisfaction of lien

claimants. Here, however, the bond, though incorporating the Knoll–Sordoni contract, did not condition the obligation of either the principal or surety to satisfaction of obligations under the Knoll–Sordoni contract, nor was the right of a claimant under the bond in any way related to its ability to assert a lien. Rather, the undertaking of the principal and surety was simply to pay claimants for labor and material. *See also Restatement of Security*, § 165 (1941). Thus, under established Pennsylvania law United should be liable on the bond.

■ United seeks to avoid its plainly stated obligation by advancing what it characterizes in its brief as the basic principle of surety law, that where the liability of the surety is joint and several with the principal, its liability will be no greater than that of the principal. It observes that "[a]s a general rule, the liability of a surety ends with the extinguishment of the obligation of his principal." Therefore, United contends that "a determination as to whether United is liable in damages to Knecht requires an examination as to whether Knecht has any right of action against Sordoni." It then points out that under the above quoted Article 19.1 of the Sordoni–Ambrose contract, a sub-subcontractor is not in a contractual or third party beneficiary relationship with Sordoni and can have no right of action against either Sordoni or Knoll.[4] Accordingly, as Knecht can assert no claim against Sordoni, United, as Sordoni's surety, cannot be liable to Knecht. In support of this contention, United relies primarily on *Dravo–Doyle Co. v. Royal Indemnity Co.*, 372 Pa. 64, 92 A.2d 554, discussed above, and *McShain v. Indemnity Ins. Co. of North America*, 338 Pa. 113, 12 A.2d 59 (1940).

We do not doubt that United has correctly stated general surety law. For example, in *Exton Drive-In, Inc. v. Home Indemnity Co.*, 436 Pa. 480, 261 A.2d 319 (1969), *cert. denied*, 400 U.S. 819, 91 S.Ct. 36, 27

---

3. We also note that under the Pennsylvania Mechanic's Lien Law of 1963 Knecht did not have standing to file a lien. *See* Pa.Stat.Ann. tit. 49, §§ 1201(6), 1303(a) (Purdon 1965).

4. United does not contend in its brief on this appeal that Sordoni did not consent to the Ambrose–Knecht sub-subcontract. In any event, it is clear that Sordoni was aware of the Ambrose–Knecht sub-subcontract and it does not assert in its brief that it objected to it.

L.Ed.2d 46 (1970), the Supreme Court of Pennsylvania held that inasmuch as a contractor was not liable for delay in completing a paving contract, his surety on a performance bond was not liable to the owner either as the liability of the surety was no greater than that of the principal. 436 Pa. at 489–91, 261 A.2d at 325. *McShain* was an action in which a contractor, who terminated a subcontract by reason of the subcontractor's violation of his agreement, sued the subcontractor's surety on a bond conditioned for the faithful performance of the subcontract. The surety joined the subcontractor as an additional defendant. At a jury trial a verdict was returned for the contractor against the surety but not against the subcontractor. The trial judge's order for a new trial was affirmed. The Supreme Court of Pennsylvania found that there was an error in receipt of evidence against the surety and pointed out that in any event it was axiomatic that "the liability of a surety is not greater than that of a principal and that a judgment in favor of the principal upon the merits of the case can be asserted as a defense by the surety." 338 Pa. at 118, 12 A.2d at 61. *See also East Crossroads Center, Inc. v. Mellon–Stuart Co.*, 416 Pa. 229, 205 A.2d 865 (1965).

It is clear from *Exton Drive–In* and *McShain* that if the obligation of the surety is limited to a guarantee of the performance of a contract by the principal, the obligee will be unable to recover against the surety if the obligee has no cause of action against the principal on the contract.[5] But this principle of law is not controlling here as Knecht is not asserting its claim on its sub-subcontract. Rather, it is suing on the bond which was an undertaking to Knoll by United and Sordoni that, without regard to the provisions of later subcontracts, created an independent liability to claimants as defined in the bond and in the clearest language possible allowed the claimants to sue on the bond. Thus,

under the bond Sordoni became liable to a sub-subcontractor even though as a matter of ordinary contract law it would otherwise have had no obligation to the sub-subcontractor.

■ Further, nothing expressly set forth in the above quoted Article 19.1 of the Sordoni–Ambrose contract in any way released or extinguished the rights of a sub-subcontractor such as Knecht under the bond. Indeed, the Article never mentioned the bond. United in its brief points to no other provision of the Sordoni–Ambrose subcontract or the Ambrose–Knecht sub-subcontract which released or terminated the rights of a sub-subcontractor as a claimant under the bond even though the Sordoni–Ambrose subcontract precluded Ambrose's sub-subcontractors from filing mechanic's lien claims on the project. We emphasize that the Sordoni–Ambrose agreement which was incorporated into the Ambrose–Knecht agreement simply provided that sub-subcontractors would not be in a contractual or third party beneficiary relationship with Sordoni and would have no right of action against it.

We also observe that Sordoni could have provided in its agreement with Ambrose that any sub-subcontractor waive any right on the bond against either the principal or surety. In this regard we point out that inasmuch as the bond was in place when the Sordoni–Ambrose subcontract was executed Sordoni had reason to seek such a provision. In view of all of the aforesaid, we will affirm the order of November 18, 1987.

■ In reaching our result, we have not overlooked the fact, emphasized by United, that on January 14, 1982 Sordoni executed an indemnity agreement which contemplated that United from time to time might issue bonds on behalf of Sordoni which in turn broadly agreed to indemnify United for losses on the bonds. While the practical consequence of that agreement may

---

**5.** United also relies on *Central Contracting Co. v. Maryland Casualty Co.*, 242 F.Supp. 858 (W.D. Pa.1965), *aff'd*, 367 F.2d 341 (3d Cir.1966), but we find that case somewhat tangential as it simply deals with whether a forum selection provision in a subcontract should be available to a surety sued by a subcontractor in a situation which the surety was expressly mentioned in the subcontract.

be to place the loss for Knecht's claim on Sordoni we regard that as immaterial. We see no reason why Knecht's rights against United can be negated by a collateral understanding between United and Sordoni.[6]

Our conclusion that Knecht may recover on the bond from United does not determine United's liability for attorney's fees. In considering this issue our scope of review is plenary.[7]

The parties are in accord that in this diversity action we resolve the attorney's fee issue under Pennsylvania law, *see Montgomery Ward & Co. v. Pacific Indemnity Co.*, 557 F.2d 51, 56 (3d Cir.1977), and that counsel fees are recoverable only if permitted by statute, clear agreement of the parties, or some other established exception. *Ibid.; Corace v. Balint*, 418 Pa. 262, 271–73, 210 A.2d 882, 887 (1965). We agree. Further, inasmuch as Knecht does not rely on a statute to support the award of attorney's fees and the facts of this case do not conform to any established exception, we need only predict whether the Supreme Court of Pennsylvania would construe the bond so as to include attorney's fees.[8]

The bond provides that every claimant who has not been paid for work or labor done or performed or material furnished may sue on the bond for such sum or sums "as may be justly due." Thus, the bond does not specifically allow recovery of attorney's fees. Further, inasmuch as United's obligation cannot be extended beyond the language on the bond, we need only resolve whether the attorney's fees may be regarded as a sum "justly due." *See Reliance Universal, Inc. v. Ernest Renda Contracting Co.*, 308 Pa.Super. 98, 454 A.2d 39, 45 (1982).

The district judge noted that unless the fees were paid, Knecht would not be made whole. This undoubtedly is correct but the judge's holding proved too much, as it is always true that when a plaintiff must make expenditures for attorney's fees to recover a debt it will not be made whole unless its fees are also recovered. Further, whenever a person is indebted to another the sum owed may be regarded as justly due. For example, a patron's obligation on an open account for merchandise purchased from a merchant may be said to be for a debt "justly due." Thus, we see no significance with respect to attorney's fees in the fact that Knecht may sue for a sum "justly due." In fact, we can hardly

---

**6.** We note that in his dissent Judge Cowen relies, *inter alia*, on *Dravo–Doyle Co. v. Royal Indemnity Co.*, 372 Pa. 64, 92 A.2d 554 and *Van Cor, Inc. v. American Casualty Co.*, 417 Pa. 408, 208 A.2d 267 (1965). See dissent at 82–83. We have already explained why *Dravo–Doyle* is not inconsistent with our result. *See* above, at 78. *VanCor* is also not inconsistent as it simply holds, insofar as germane here, that a surety under a bond guaranteeing *performance* of a contract which became part of the bond, will not be liable to an entity making a claim under the bond for delay damages when the entity is not entitled to make a direct claim against the principal for such damages.

**7.** A trial was held on December 7, 1987 on the issue of whether Knecht should be awarded attorney's fees and if so the amount. The evidence, however, seems to have been directed primarily to the quantum of fees rather than United's liability for them. Following the trial the parties submitted proposed findings of fact and conclusions of law. The findings of the court awarding the fees were set forth in its order of March 16, 1988 which simply recited "[t]he Court's decision to award attorneys' fees is predicated on the language of the subject

labor and material bond which allows for recovery of all 'sums ... justly due.' Under the circumstances presented, the Court finds that the plaintiff would not be made whole, nor would recover all 'sums justly due,' unless the Court required the defendant to reimburse the plaintiff for the attorney's fees it incurred on the prosecution of this litigation." We regard this holding as essentially a legal conclusion as it is obvious that a litigant who expends money to recover a debt is not made whole absent recovery of its attorney's fees. Thus, our review is plenary. *United States v. Adams*, 759 F.2d 1099, 1106 (3d Cir.), *cert. denied*, 474 U.S. 906, 971, 106 S.Ct. 275, 336, 88 L.Ed.2d 236, 321 (1985). Further, this is not a case in which the court interpreted ambiguous language to arrive at a meaning. *See Ram Construction Co. v. American States Ins. Co.*, 749 F.2d 1049, 1052 (3d Cir.1984). But even if we reviewed the matter under a clearly erroneous standard, our result would not be different.

**8.** Knecht on this appeal does not rely on 42 Pa.Cons.Stat. Ann. § 2503 (Purdon 1981).

conceive of how a bond could be written to authorize a claimant to sue for anything less than a sum justly due. We also observe that in some contracts express provision is made for recovery of attorney's fees in the event of an action for a breach. Yet in United's bond no reference was made to attorney's fees. In the circumstances, we conclude that attorney's fees are not recoverable in this action.

While we are directed to no Supreme Court of Pennsylvania case controlling our result, precedent supports our conclusion. In *Can–Tex Industries v. Safeco Ins. Co.*, 460 F.Supp. 1022 (W.D.Pa.1978), an action decided under Pennsylvania law, the court held that a surety on a payment bond on a construction contract conditioned on the payment by the principal of all money due any claimant for labor or materials on the project, was not liable for attorney's fees when the principal defaulted as the fees were not due for labor or materials. While *Can–Tec* was in part based on statutory interpretation, it supports our result. Recently the Supreme Court of Ohio in *Dean v. Seco Electric Co.*, 35 Ohio St.3d 203, 519 N.E.2d 837 (1988), considered a case in which a contractor had delivered a labor and material bond with language authorizing an action against the surety identical to that in the bond in this action. In *Dean* the principal had underpaid employees in violation of the prevailing wage statute. The court held that under the bond, statutory penalties for underpayment and attorney's fees incurred by the employees in bringing the action could not be regarded as sums justly due. Thus, the surety was not liable for them. *Dean* is a compelling precedent.[9]

Further, our result is consistent with *F.D. Rich Co. v. United States*, 417 U.S. 116, 94 S.Ct. 2157, 40 L.Ed.2d 703 (1974), in which the Supreme Court determined that under federal law a Miller Act bond posted by a contractor to protect persons supplying labor and material did not authorize an award of attorney's fees when the contractor failed to make payment even though

the plaintiff was entitled to recover such sum as was "justly due." 40 U.S.C. § 270b(a). The court noted that a contrary result in the context of everyday commercial litigation would have obviated the American rule that each litigant must bear the cost of its own legal representation. 417 U.S. at 130–31, 94 S.Ct. at 2165–66. While *Rich* is not binding on us as we decide this case under Pennsylvania law, it nevertheless is extremely instructive. Certainly the reasoning in *Rich* is directly contrary to that of the district judge. We also point out that we have previously predicted in another context that the Supreme Court of Pennsylvania in announcing Pennsylvania law would follow the Supreme Court of the United States. *Aloe Coal Co. v. Clark Equipment Co.*, 816 F.2d 110, 117–19 (3d Cir.), *cert. denied*, —— U.S. ——, 108 S.Ct. 156, 98 L.Ed.2d 111 (1987). We think it would here as well.

The order of November 18, 1987 will be affirmed and the order of March 16, 1988 will be reversed. The matter is remanded to the district court for further proceedings consistent with the opinion.

COWEN, Circuit Judge, concurring in part and dissenting in part:

I.

I agree with my colleagues that the district court erred in awarding attorneys' fees. There exists, however, an additional and independent basis to reverse the grant of attorneys' fees, even if we had determined that fees were allowable. The district court clearly failed to make the findings of fact required by this Court's decision in *Lindy Bros. Builders, Inc. v. American Radiator & Sanitary Corp.*, 487 F.2d 161 (3d Cir.1973) (Lindy I).

In *Lindy I*, we stated that "the first inquiry of the Court should be into ... how many hours were spent in what manner by which attorneys.... After determining ... the services performed by the attorneys, the district court must [then] attempt to value those services." *Id.* at 167; *see*

---

9. The *Dean* court was sharply divided but the dissenters, though contending that the bond in-

cluded an obligation for the statutory penalties, never mentioned attorney's fees.

*also Pawlak v. Greenawalt,* 713 F.2d 972, 977 (3d Cir.1983), *cert. denied,* 464 U.S. 1042, 104 S.Ct. 707, 79 L.Ed.2d 172 (1984); *Lindy Bros. Builders v. American Radiator & Standard Sanitary Corp.,* 540 F.2d 102 (3d Cir.1976) (Lindy II). The majority states that "the findings of the court awarding the fees were set forth in its order of March 16, 1988...." Maj.Op. at 80 n. 7. However, this order merely states in relevant part:

> The Court's decision to award attorneys' fees is predicated on the language of the subject labor and material payment bond which allows for recovery of all 'sums ... justly due.' Under the circumstances presented, the Court finds that the plaintiff would not be made whole, nor would recover all 'sums ... justly due,' unless the Court required the defendant to reimburse the plaintiff for the attorneys' fees it incurred in the prosecution of this litigation.

App. at 859–60. This language does not qualify as a finding under *Lindy I.*

## II.

I part company with my colleagues sharply with respect to the issue of United's liability under the bond and I, therefore, respectfully dissent.

Knecht argues that the provisions in the Knecht–Ambrose sub-subcontract are legally insufficient to incorporate into that contract the Ambrose–Sordoni subcontract and that, in any event, it has an independent right under the bond to recover as an intended third-party beneficiary. The majority's holding adopts the position of Knecht that the bond "created an independent liability to claimants ... and in the clearest language possible allowed the claimants to sue on the bond." Maj.Op. at 79.

This conclusion, however, flies in the face of the Pennsylvania Supreme Court's decision in *Dravo–Doyle Co. v. Royal Indem. Co.,* 372 Pa. 64, 92 A.2d 554 (1952). There the Pennsylvania Supreme Court determined the question of liability on the bond only after ascertaining whether the contractual terms between the general contractor and the subcontractor contained any limitation regarding the obligation of the subcontractor to pay unpaid materialmen. In the course of making this determination, the court stated that "[t]he question here involved is one of interpreting the contract [between the general contractor and the subcontractor] with a view to determining (a) whether the parties intended to benefit any third parties, and (b) if so, what parties they intended to benefit." 372 Pa. at 69, 92 A.2d at 556. The court found that the contract between the general contractor and the subcontractor contained no specific promise by the subcontractor to pay the materialmen. Additionally, the court determined that the contract restricted the subcontractor to payment of obligations for which liens had been established. 372 Pa. at 69, 92 A.2d at 556.

In light of these findings, the court held that "in plain and unambiguous words the parties to the contract have shown their intention to limit the third-party beneficiaries to a specific class of persons, viz., those who have liens." 372 Pa. at 69–70, 92 A.2d at 556. Thus, *Dravo* clearly indicates that the terms of the bond and the contract must be construed together to determine who can claim as a third party beneficiary.[1]

---

1. Knecht attempts to distinguish *Dravo* on the basis that *Dravo* involved a performance bond (not a labor and material payment bond as in the instant case). *See* Knecht's Brief at 21. The Pennsylvania Supreme Court did state in *Dravo* that, "The bond, of course, only insured that the Industrial Contracting Company [the subcontractor] would carry out the terms of the contract. Therefore, the decision involves an interpretation of the contract." 372 Pa. at 68, 92 A.2d at 556. However, the court also noted that the distinction was irrelevant and stated that, "the question here is not the type of bond but

what parties it was the intention of the contracting parties to benefit." 372 Pa. at 70, 92 A.2d at 556. *See also,* Annotation, *Labor or* material furnished subcontractor for public works improvement as within coverage of bond of principal contractor, 92 A.L.R.2d 1250, § 2 (1963) (stating that "[w]ith respect particularly to a nonstatutory bond, it has been held that the contract and bond are to be read together, and that the intention of the parties is the principal consideration in the interpretation of the contract and the bond with respect to the coverage thereunder.") (footnotes omitted). The majori-

The majority has cited only one case, *Pennsylvania Supply Co. v. National Casualty Co.*, 152 Pa.Super. 217, 31 A.2d 453 (1943), in support of its position that there is an independent basis for liability under the bond. However, this intermediate appellate court case has been distinguished repeatedly and cannot withstand the strong language of *Dravo*. *See, e.g., Van Cor, Inc. v. American Casualty Co.*, 417 Pa. 408, 208 A.2d 267 (1965) (per curiam). In *Van Cor*, a subcontractor obtained a performance bond and a labor and material payment bond in the course of a construction project for a local school authority. The bond required, among other things, that the subcontractor cooperate with the other contractors. When the subcontractor became bankrupt, Van Cor, the general contractor, sued the surety for damages caused by the delay resulting from the subcontractor's default. In holding that Van Cor was not an intended beneficiary of the bond, the Pennsylvania Supreme Court first examined the underlying contract documents.[2] The court stated that, "We are considering now the possible liability of one contractor to another arising out of such contract provisions, because I think it may safely be said that if [the principal] were not liable at the suit of [Van Cor], it would be futile to assert liability against the surety." 417 Pa. at 412, 208 A.2d at 269 (quoting lower court opinion of Judge Charles Waters). The court finally concluded that:

> ty, notwithstanding the language in *Dravo* disapproving of a distinction between labor and material payment bonds and performance bonds, attempts to distinguish *Van Cor* on such grounds. Maj.Op. 80, n. 6. Additionally, the majority adheres to the position that *Dravo* is not inconsistent with their result. *Id.* Because of the majority's misplaced focus on the bond, they are willing to look *only* to the bond to determine liability and refuse to consider contractual provisions which may limit liability unless those provisions have become part of the bond. Since *Dravo* makes clear that the contract must be examined to determine whether liability exists under the bond, the majority's result is inconsistent with *Dravo*.

**2.** In fact the court noted that "the terms of the contract and specifications between the authority and [the principal] became part of the bond

Despite the apparently increasing liberal policy in this respect, and even though a corporate surety in business for profit is not a 'favorite of the law,' *Pennsylvania Supply Co. v. National Casualty Co.*, supra, I cannot bring myself to the conclusion that the parties to the contract and bond in suit intended to make [*Van Cor*] a third-party beneficiary entitled to recover for delay damages such as here involved.

417 Pa. at. at 414, 208 A.2d at 270 (quoting lower court opinion of Judge Charles Waters).

In determining who the intended beneficiaries are under the suretyship bond which United gave to Knoll (as *Dravo* and *Van Cor* indicate we must do), it is clear that Sordoni did not intend Knecht to be a beneficiary, and equally clear that Knecht did not consider itself a beneficiary until Ambrose subsequently defaulted. For example, Harry C. Knecht, president of Knecht, testified that he did not rely on the bond. While Knecht's original sub-subcontract with Ambrose was signed October 18, 1984 (and later amended in February, 1985), Knecht stated that he had never seen the bond before April, 1985.[3] App. at 343. It was only after one of Knecht's materialmen requested a copy of the bond that Knecht even looked at it. App. at 344.[4]

### A.

More fundamentally, the majority simply has failed to explain how this case falls

> issued by the surety", *Van Cor*, 417 Pa. at 411, 208 A.2d at 269, even though the bond apparently did not explicitly incorporate the contract as it did in *Dravo*. Thus, it is clear that the court in *Van Cor* believed that the contract documents must be considered in determining who the bond was intended to benefit.

**3.** Knecht began working on the project in June, 1984. App. at 351–52.

**4.** The record shows that Ambrose, at the time of Knecht's contract negotiations with Ambrose, owed Knecht approximately $40,000.00 for a previous construction project. Knecht, in light of Ambrose's prior failure to pay, could have protected itself against another default by Ambrose. Now Knecht seeks to make Sordoni pay twice when Knecht could have taken appropriate measures to protect itself.

outside the realm of black-letter suretyship law. Under general principles of suretyship law, the liability of the surety can be no greater than the liability of its principal.[5] *United States v. Seaboard Sur. Co.,* 817 F.2d 956, 962 (2d Cir.1987), *cert. denied,* — U.S. —, 108 S.Ct. 161, 98 L.Ed. 2d 115 (1987); *Pacific Lining Co. v. Algernon–Blair Constr. Co.,* 812 F.2d 237, 241 (5th Cir.1987), *certification denied,* 506 So. 2d 505 (La.1987), *opinion after certification denied,* 819 F.2d 602 (5th Cir.1987); *Painters Local Union No. 171 v. Williams & Kelley, Inc.,* 605 F.2d 535, 539 (10th Cir.1979); *Smith v. Sinclair,* 424 F.Supp. 1108, 1115 (D.C.Okla.1976); *Diversified Utilities Sales, Inc. v. Monte Fusco Excavating Contracting Co.,* 71 F.R.D. 661, 664 (E.D.Pa.1976); *Exton Drive–In, Inc. v. Home Indem. Co.,* 436 Pa. 480, 489–90, 261 A.2d 319, 325 (1969), *cert. denied,* 400 U.S. 819, 91 S.Ct. 36, 27 L.Ed.2d 46 (1970). It has long been the rule in Pennsylvania that the liability of the surety ends with the extinguishment of the liability of the principal. *Metropolitan Nat'l Bank v. Merchants & Mfrs.' Nat'l Bank,* 155 Pa. 20, 25 A. 764 (1893); *In re Brock,* 312 Pa. 7, 166 A. 778 (1933). The bond clearly provides that the principal and surety are jointly and severally liable for the benefit of the claimants. Because Sordoni successfully extinguished its liability, i.e., it paid Ambrose in full, there can be no liability on the part of United.[6] Moreover, Knecht's counsel conceded during oral argument that no cause of action could lie against Sordoni. Such an astonishing concession highlights the weakness of Knecht's case. Yet the majority chooses to ignore this critical concession.

Instead, the majority, by permitting Knecht to recover from United, is permit-

ting Knecht to do indirectly what it could not do directly—namely, recover from Sordoni. The facts of this case demonstrate that the majority's conclusion defies normal commercial practice. In keeping with commercial practice, United obtained a letter of indemnification from Sordoni which contained the following provisions:

> SECOND: To indemnify, and keep indemnified, and hold and save harmless the Surety against all demands, claims, loss, costs, damages, expenses and attorneys' fees whatever, and any and all liability therefor, sustained or incurred by the Surety by reason of executing or procuring the execution of any said Bond or Bonds, or any other Bonds, which may be already or hereafter executed on behalf of the Contractor, or renewal or continuation thereof; or sustained or incurred by reason of making an investigation on account thereof, prosecuting or defending any action brought in connection therewith, obtaining a release therefrom, recovering or attempting to recover any salvage in connection therewith or enforcing by litigation or otherwise any of the agreements herein contained. Payment of amounts due Surety hereunder together with legal interest shall be payable upon demand.

> THIRD: To furnish money to the Contractor or to the Surety as needed for the prompt payment of labor, materials, and any other costs or expenses in connection with the performance of contracts when and as requested to do so by the Surety.

App. at 625.

This agreement of indemnity between United and Sordoni merely affirms the common law right of indemnification in favor of United and against Sordoni.[7] The

---

5. The majority does not contest the fact that Sordoni is the principal for whom United posted the bond.

6. *See, e.g.,* Restatement of Contracts § 386 (1932), which provides:
   DISCHARGE BY EXACT PERFORMANCE OF DUTY.
   A contractual duty is discharged by the exact performance thereof.

7. *See, e.g.,* Restatement of Security, § 104 (1941):

REIMBURSEMENT BY PRINCIPAL: IN GENERAL.
   (1) Where the surety makes a payment or otherwise performs on default by the principal, or where the surety's property is used to satisfy the principal's duty, it is the duty of the principal to reimburse the surety to the extent of his reasonable outlay if
   (a) the surety's obligation has been incurred, or his property has been subjected to a charge, with the consent of the principal, or

surety's right of indemnification, however, is conditioned upon the surety's assertion of those defenses available to the principal. Section 108(5) of the Restatement provides:

> Where the principal has a defense which is known to and available to a surety who has become a surety with the consent of the principal, and the surety does not assert it, or asserts it in an action without giving the principal notice of the action and an opportunity to defend it, or where the surety as well as the principal has a defense, the principal has no duty to reimburse the surety unless business compulsion requires performance by the surety.
>
> . . . .
>
> Commentary on Subsection (5):
> j. Where both surety and principal have defenses it would be contrary to the equitable basis of the rule of reimbursement if the surety by paying the creditor could compel the principal to reimburse him. . . . It should be observed that generally the surety is under no business compulsion to perform where the principal has a substantial defense.

Restatement of Security § 108(5) (1941). Therefore, United *must* assert the defense that Knecht has no cause of action against Sordoni. Ignoring the bald concession that Knecht cannot hold Sordoni liable defeats the essential purpose of these Restatement provisions.[8] The majority's holding also undercuts several other sections of the Re-

statement of Security, including section 110 which states:

> SURETY'S RIGHT OF REIMBURSEMENT AFTER DISCHARGE OF PRINCIPAL OBLIGATION.
>
> Where the principal's obligation has been discharged by payment or by release from the creditor not reserving his rights against the surety, the principal has no duty to reimburse the surety.

Restatement of Security § 110 (1941). By holding United liable, Sordoni will bear the burden under its agreement of indemnification with United. This is precisely the result which the above-cited provisions of the Restatement seek to prevent.[9]

### B.

Finally, I take issue with the majority's holding that the proper interpretation of the "Principal Contract" was not a material fact in dispute. United's argument—that it is not liable because its principal, Sordoni, is not liable—rests on its assertion that certain provisions in the Ambrose–Sordoni subcontract disclaiming liability to possible third-party beneficiaries have been incorporated into the Knecht–Ambrose sub-sub-contract. Specifically, United has argued that Sordoni disclaimed any liability to possible third party beneficiaries by virtue of Article 19.1 in the Sordoni–Ambrose subcontract, and that Paragraph 2 of the Terms and Conditions of the Knecht–Amb-

---

(b) the principal has assumed an obligation which was once the primary obligation of the surety.

**8.** In addition, numerous courts have acknowledged the basic rule of suretyship law that a surety can assert a defense of its principal. *See, e.g., Rhode Island Hosp. Trust Nat'l Bank v. Ohio Ca. Ins. Co.,* 789 F.2d 74, 78 (1st Cir.1986) (stating that "[t]he basic rule on the liability of sureties is that 'the surety is not liable to the creditor unless his principal is liable'[;] thus he may plead the defenses which are available to his principal. . . ."); *Siata Int'l U.S.A., Inc. v. Insurance Co. of No. Am.,* 362 F.Supp. 1355, 1360 (E.D.Pa.1973) (noting that "[i]t is true that this [payment by the principal] is a valid defense for a surety in a suit by the obligee, and would discharge the surety pro tanto."), *rev'd on other grounds,* 498 F.2d 817 (3d Cir.1974).

**9.** The commentary following Section 122, "Release of Principal", states a similar rationale for

not placing liability on the surety once a principal has been released:

> Where the surety and principal are bound jointly, the release of one is the release of both unless the rights of the obligee are reserved against the other. . . . If the principal has no longer a duty as a result of the creditor's act, the surety should not be held to an obligation to answer for a default of that duty. Furthermore, if the surety could be compelled to pay after the principal's release, he would be entitled to reimbursement if he had become a surety at the principal's request or with his consent. *Such an outcome would be unfair to the principal after a release because it would afford the creditor a means of attacking the principal indirectly through the surety.*

Restatement of Security § 122 (1941) (emphasis added).

rose sub-subcontract incorporate all of the provisions of the Sordoni–Ambrose subcontract, including Article 19.1.[10] United then argues that since its liability as surety can rise no higher than the liability of Sordoni, the principal, it was error to enter judgment against United.

The majority has acknowledged United's position that the "Principal Contract" is in fact the contract between Sordoni and Ambrose. Maj.Op. at 77. Reference to several of the paragraphs in the Terms and Conditions of the Knecht–Ambrose sub-subcontract makes it readily apparent that (even if it is uncertain who the intended parties are) the parties to the "Principal Contract" logically could not be Ambrose and Knecht.[11] For example, Paragraph 7 of the Terms and Conditions of the Knecht–Ambrose sub-subcontract provides:

> Payments to Subcontractor will be made 3 days after our receipt of payment of PRINCIPAL CONTRACT. Subcontractor, as a condition precedent to payment hereunder, shall furnish all necessary releases, lien waivers, affidavits and other documents required by CONTRACTOR to keep Owner's premises free from liens or claims for liens of all material-men, subcontractors or laborers. Acceptance of final payment by Subcontractor shall be a full and complete discharge of W.J. Ambrose, Inc. No payment, including final payment, shall be construed to be an acceptance of defective work or improper materials.

App. at 250.

It simply makes no sense to construe this provision to mean that payments to Knecht are to be made three days after payment of the Knecht–Ambrose contract. Further, Knecht's counsel conceded in an early briefing of the case that such a construction might render sections of the Terms and Conditions "legally unnecessary" and would constitute "excess verbiage." App. at 445. The majority apparently accepts the logical inconsistency of Knecht's argument regarding this point. Maj.Op. at 77 n. 1. The majority, however, dismisses the point as immaterial based upon the belief that there is an independent right to sue under the bond. If, however, the incorporated language of the contract must be considered in determining who the intended beneficiaries are—as I believe it must be considered under the rulings of the Pennsylvania Supreme Court in *Dravo* and *Van Cor*—then the factual dispute regarding the interpretation of the bond is material. The only logical resolution of the dispute demonstrates that sub-subcontractors such as Knecht were never intended to be third-party beneficiaries.

On the basis of the foregoing, I respectfully dissent.

---

10. Paragraph 2 provides:
    Work performed by Subcontractor shall be in strict accordance with CONTRACT DOCUMENTS applicable to the work to be performed and materials, articles and/or equipment to be furnished hereunder. Subcontractor shall be bound by all provisions of these documents and also by applicable provisions of the PRINCIPAL CONTRACT to which the CONTRACTOR is bound, and to the same extent.
    App. at 250.

11. Harry Knecht testified that he understood the "Principal Contract" to refer to the contract between Knoll and Sordoni. App. at 320.